# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| Bree Smith Friedrichs, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 3:25-cv-01494 |
| | ) | |
| Scripps Media, Inc. d/b/a/ WTVF | ) | |
| News Channel 5, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>

Defendant Scripps Media, Inc. d/b/a WTVF News Channel 5 ("Scripps"), pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint. As explained below, Plaintiff's claims fail as a matter of law based on threshold procedural defects and her failure to plead facts sufficient to state a plausible claim for relief.

## I. <u>INTRODUCTON</u>

First, Plaintiff's claims under Title VII of the Civil Rights Act ("Title VII") are untimely because her EEOC charge was filed more than 300 days after any alleged gender-based conduct or retaliatory act. Plaintiff's claims under the Tennessee Human Rights Act ("THRA") are likewise barred by the applicable statute of limitations. Plaintiff's state law claims for intentional and negligent infliction of emotional distress are also untimely, nor does her Complaint contain facts sufficient to give rise to such a claim, and, in any event, are precluded by the exclusivity provision of the Tennessee Workers' Compensation Act ("TWCA").

Plaintiff's constructive discharge claims are independently subject to dismissal for several reasons: 1) Plaintiff failed to exhaust her administrative remedies; 2) constructive discharge is not

a standalone cause of action under either Title VII or the THRA; and 3) even if it were, Plaintiff's Complaint fails to plead facts plausibly demonstrating that she was subjected to working conditions so objectively intolerable that a reasonable person in her position would have felt compelled to resign. Instead, Plaintiff merely repackages the same allegations underlying her discrimination, harassment, and retaliation claims, which is insufficient as a matter of law to state a claim for constructive discharge.

## II. FACTUAL ALLEGATIONS[1]

Plaintiff began working for Scripps as a meteorologist in 2016. She remained working as a meteorologist until January 2025, when she elected to resign rather than renegotiate her employment contract. (Doc. 1, Compl. ¶¶ 2, 7).

According to Plaintiff's Complaint, she was subject to the following categories of discriminatory and harassing conduct, which ultimately led Plaintiff to resign:

- Being subjected to obscene, sexist, and abusive behavior and language by a male colleague as an ongoing condition of her employment;
- Requiring her to work unscheduled and/or extremely long grueling hours under difficult conditions to cover shortfalls caused by male colleagues' incompetence and/or absences;
- Being denied legitimate leave requests and/or sick leave requests while granting same to male colleagues;
- Being subjected to unwarranted, degrading, demeaning, and unequal scrutiny of her physical appearance;
- Not being protected from harmful and defamatory "deepfake" images;
- Meaningful action to protect her from these obscene and defamatory "deepfake" images not being taken;
- Having job responsibilities taken away, while her role and influence were reduced, and new work requirements imposed on her after she complained of gender discrimination;
- Having her role in co-writing the weather team schedule and coordination of community events discontinued;
- Being advised not to engage further in protected activities;

---

[1] Scripps references these allegations solely as pled in the Complaint for purposes of this Motion to Dismiss and does not admit their truth. Scripps denies the vast majority of Plaintiff's allegations, many of which are frivolous in nature in that they are blatantly false.

- Having her request for investigation and remediation of discriminatory practices denied.

(*Id.* ¶¶ 83, 108).[2] Plaintiff's actual factual allegations are as follows:

- Between 2017 and 2022, a male coworker made a handful of inappropriate comments toward her and other female employees.[3] (*Id.* ¶¶ 20-24).
- In 2020 and 2021, Scripps gave her more job duties. (*Id.* ¶ 26).
- In 2020 during a severe weather event, a male colleague left the station and did not work overtime while Plaintiff worked sixteen hours straight. (*Id.* ¶ 28).
- In 2021, she was required to broadcast from home when she was positive with COVID-19. (*Id.* ¶ 29).
- She was required to attend meetings with a stylist who, according to Plaintiff, made comments criticizing and discussing women's bodies in an inappropriate manner. (*Id.* ¶¶ 30-31).
- She reported the above issues to Human Resources in 2022. (*Id.* ¶ 24).
- Scripps conducted an investigation,[4] the male colleague was issued a disciplinary letter, and female employees were advised to report any further issues directly to station management. (*Id.* ¶¶ 33-34, 36, 38).
- Following the investigation in 2022, Scripps removed Plaintiff's scheduling responsibilities, required her to submit an agenda for the community engagement work she performed outside the studio on Fridays and required her to send emails advising of the work she performed outside the studio. (*Id.* ¶ 41).
- In 2023, a male colleague slept through an evening broadcast without consequence. (*Id.* ¶ 27).
- In 2023, Plaintiff was contacted while on vacation to cover during a severe weather event when a male colleague was found lying on the floor. (*Id.* ¶ 28).
- In 2023, the male colleague about whom Plaintiff complained was allowed to lead the DEI program. (*Id.* ¶42).

Plaintiff's Complaint contains only one alleged incident occurring within the year leading up to her resignation in January 2025. Plaintiff alleges:[5]

---

[2] Notably, the allegations Plaintiff relies upon to support constructive discharge are the very same allegations underlying her discrimination, retaliation, and hostile work environment claims. (*See id.* ¶¶ 67, 76, 87, 95, 108).

[3] Plaintiff does not allege any specific comments by the male co-worker after 2022.

[4] Plaintiff acknowledges that Scripps conducted an investigation, yet simultaneously alleges that Scripps failed to intervene in accordance with its own internal policy, attached as Exhibit A. (*Id.* ¶ 19.) That policy expressly prohibits all forms of harassment and retaliation against employees who report harassment and requires that all such reports be investigated promptly and in as confidential a manner as possible. (Exhibit A.). The policy is attached herein as a document specifically referenced in the Complaint but was not attached to the Complaint.

[5] Plaintiff alleges that in 2024, poor air quality in the station negatively impacted her health and that Scripps failed to purchase an air-filtering system to improve the air quality. (*Id.* ¶ 31) While this allegation is blatantly false, and likely a violation of Rule 11 of the Federal Rules of Civil Procedure, it is important to note that Plaintiff does not cite this allegation as the basis for any of her claims. (*Id.* ¶¶ 65-120) Plaintiff did not even list this allegation as one of the reasons she felt compelled to resign. (*Id.* ¶¶ 83, 108) Regardless, this allegation cannot form the basis of Plaintiff's

3
14296995v1

- In October 2024 she received emails from a viewer warning her sexually suggestive "deepfake" images of her were circulating online. (*Id*. ¶ 45).
- She reported the emails to station leadership, who responded the station would block the emails as they did when a male employee, Phil Williams, in a similar situation received death threats.[6] (*Id*. ¶ 51).
- As a result of the "deepfake" emails from an outside source, Plaintiff's physician recommended that she take leave due to worsening depression, anxiety, and insomnia, and she ultimately took medical leave beginning the end of October 2024. (*Id*. ¶¶ 47-48).

Plaintiff alleges that after the "deepfake" incident she concluded that the company would not address her concerns and ultimately declined to renew her contract in January 2025. (*Id*. ¶ 53).

It is also important to note what Plaintiff has failed to allege in her Complaint. Critically, Plaintiff does not allege that Scripps forced her to resign, refused to extend or renegotiate her contract, presented her with an ultimatum, or otherwise engaged in conduct leaving her with no reasonable alternative but to end her employment.

Additionally, while Plaintiff attached the Notice of Right to Sue ("Right to Sue") she received from the Equal Employment Opportunity Commission ("EEOC") to her Complaint, Plaintiff did not attach a copy of her actual Charge of Discrimination ("Charge") despite referencing her Charge. (*Id*. ¶¶ 66, 74). Plaintiff filed her Charge on March 31, 2025. (Exhibit B).[7] Her Right to Sue was issued on September 29, 2025. (Dkt. 1, Ex.1). Plaintiff filed the instant action

Title VII or THRA claims because the allegation is not "based upon gender." Plaintiff does not allege that similarly situated male employees were treated differently. She does not allege that male employees requested and received special equipment. Plaintiff does not allege that only female employees were subject to poor air conditions. How could she? Anyone who worked in the same station, regardless of whether they were male or female, were subject to the same air conditions. *See Monak v. Ford Motor Co*., 95 F.App'x 758, 764 (6th Cir. 2004)(affirming dismissal of gender discrimination claim because everyone, man or woman, was treated the same way as the plaintiff). As a result, Plaintiff's allegation regarding the air quality at the station is of no consequence and should be disregarded by the Court.

[6] It is important to note that Plaintiff's own allegations evidence Scripps treated her the same as a similarly situated male employee. Scripps recommended the same action, that the emails be blocked, for both Plaintiff as a female and Williams as a male. As a result, Scripps' action in response to the "deepfake" cannot be deemed to be "based upon gender" as required to support a Title VII and/or THRA claim. *See Monak*, 95 F.App'x at 764. As a result, Plaintiff's allegation regarding Scripps' response to a viewer's emails regarding "deepfake" images of her online is of no consequence and should be disregarded by the Court.

[7] The Charge is being attached as a public record and also a document that was referenced in the Complaint but not attached to the Complaint.

on December 29, 2025, *ninety-one (91) days later*. (*Id.*).[8]

## III.     STANDARD OF REVIEW

### A.       Motion to Dismiss Standard

When reviewing a motion under Rule 12(b)(6), the Court determines whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Pleasant-Bey v. Shelby County Government*, No. 2:17-cv-02502, 2019 WL 5654993, at *1 (W.D. Tenn. Oct. 31, 2019) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In doing so, the Court construes the complaint in a light most favorable to the plaintiff, accepting factual allegations as true, and drawing all reasonable inferences in favor of the plaintiff. *Pleasant-Bey*, 2019 WL 5654993 at *2 (*citing DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

Further, there are two "working principles" governing a motion to dismiss. *Iqbal*, 556 U.S. at 678.  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is ***inapplicable to legal conclusions***." *Id. emphasis added.* Instead, a court considering a motion to dismiss should only accept that all ***factual allegations*** are true. Accordingly, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.

The second working principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*.  Determining whether a complaint states a plausible claim for relief is a context-specific task, requiring the reviewing court to draw upon its judicial experience and common sense. *Iqbal*, 556 U.S. at 679. The court must disregard "labels and

---

[8] Plaintiff 's Notice of Right to Sue was issued on September 29, 2025, which required her to file any civil action within ninety (90) days of receipt. *See* 42 U.S.C. § 2000e-5(f)(1). Plaintiff filed this action on December 29, 2025, ninety-one (91) days after receiving the Notice of Right to Sue. Because the Complaint was filed outside the statutory ninety-day limitations period, Plaintiff's claims are untimely and barred and should be dismissed on this basis alone. *See Williams v. Sears, Roebuck and Co*., 143 F. Supp. 2d 941 (W.D. Tenn. 2001)(dismissing case because the requirement that suit be commenced within 90 days of receipt of right to sue letter should be strictly enforced against an employee because "even one day's delay is fatal to a claim").

conclusions," and "naked assertions devoid of further factual enhancement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, at 555, 557; *Iqbal*, 566 U.S. at 698. Further, facts that are merely consistent with a defendant's liability "stop[] short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557; *Iqbal*, 566 U.S. at 698 (internal quotations omitted). In other words, where the pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the plaintiff is not entitled to relief. *Iqbal*, 566 U.S. at 679.

Ultimately, to survive a Rule 12 dismissal motion, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Duren v. Byrd*, No. 1:18-cv-00084, 2021 WL 3848105, at *6 (M.D. Tenn. Aug. 26, 2021) (quoting *Hindel v. Husted*, 875 F.3d 344, 346-47 (6th Cir. 2017) (internal quotations omitted).

### B.  Consideration of Matters Outside the Complaint

When assessing a motion to dismiss, in addition to the Complaint, a court assessing a Rule 12(b)(6) motion can consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997)). An EEOC charge is a matter of public record, and, accordingly, may be considered when ruling on a motion for judgment on the pleadings. *Jenkins v. Trane U.S., Inc.*, No. 3:12-cv-1280, 2013 WL 3272489, at *6 (M.D. Tenn. June 27, 2013) (citing *Barany-Snyder v. Weiner,* 539 F.3d 327, 332 (6th Cir. 2008) (noting that matters of public record may be considered when reviewing a Rule 12(b)(6) motion to dismiss)); *Kovac v. Super. Dairy, Inc.,* 930 F. Supp. 2d 857, 862 (N.D. Ohio 2013)(same).

The Court may also consider documents incorporated into the complaint by reference to such in the complaint itself. *See Evans v. Vanderbilt U. Sch. of Med.,* 589 F. Supp. 3d 870, 891,

fn. 13 (M.D. Tenn. 2022)("[t]he Handbook may be considered in connection with the instant motion to dismiss because it is referenced in the Complaint and integral to plaintiff's claims."); *Amini*, 259 F.3d at 502 (6th Cir. 2001) (explaining "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim").  This concept is especially applicable where – like here – a plaintiff with a legally deficient claim could attempt to survive a motion to dismiss simply by failing to attach a dispositive document to her complaint.  *Pension Benefit Guaranty Corp., v. White Consolidated Ind. Inc*., 998 F.2d 1192, 1196 (3rd Cir. 1993) (holding a court may consider a document defendant attaches as an exhibit to a motion to dismiss where the plaintiff's claims depend upon the document, noting that otherwise a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document and providing that when a complaint relies on a document, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished).

## IV.    ARGUMENT AND ANALYSIS

### A. Plaintiff's Title VII Claims Are Untimely Because She Filed Her EEOC Charge More Than 300 Days After any Gender Based Conduct or Retaliatory Conduct.

Plaintiff's Title VII intentional discrimination/first claim and retaliation/second claim must be dismissed because they are time barred. Specifically, Plaintiff did not file her EEOC charge within 300 days of any alleged "gender based" discriminatory act or retaliatory act by Scripps.

Title VII requires plaintiffs to file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1); *Aldridge v. City of Memphis*, No. 07-2614 B, 2008 WL 11417500, *2-3 (W.D. Tenn. May 5, 2008)(dismissing the plaintiffs' Title VII discrimination claim as untimely where he failed to file his EEOC charge within 300 days of adverse action). A plaintiff's claim is time barred unless she files a charge with the EEOC

within 300 days of the alleged discriminatory act. *Id*. Further, an allegation in the plaintiff's complaint that she timely filed an EEOC charge is a legal conclusion, which a reviewing court need not accept as true. *Bigbee v. Vanderbilt University*, No. 3:09-01118, 2010 WL 4320359, at *2-3 (M.D. Tenn. Oct. 20, 2010).

In this case, Plaintiff's Complaint does not specify the date on which she filed her charge of discrimination with the EEOC. Rather, Plaintiff simply concludes that she filed a timely charge. Of course, the Court need not accept Plaintiff's legal conclusion that she filed a timely charge. *Iqbal*, 556 U.S. at 678. Especially when the charge date speaks for itself. Plaintiff filed her EEOC charge on March 31, 2025. (Exhibit B). The 300-day window prior to March 31, 2025, is June 4, 2024. As a result, only gender based or retaliatory actions falling within that window are timely.

### 1. Plaintiff failed to plead any gender-based conduct within the 300-day window.

According to Plaintiff's Complaint, Scripps subjected her to intentional discrimination by:

- subjecting [her] to sexist language and behavior from a male colleague;
- subjecting [her] to demeaning and unequal scrutiny of her physical appearance;
- requiring [her] to work grueling hours and under difficult conditions to cover for the incompetence and/or absences of male colleagues;
- failing to take meaningful action to protect [her] from obscene and defamatory "deepfake" images;
- failing to take reasonable and adequate steps to prevent and correct [her] complaint of gender discrimination;[9] and

---

[9] Plaintiff clearly takes issue with Scripps investigation and response to her 2022 report despite the fact Scripps investigated her report and issued the male colleague disciplinary action. Unfortunately for Plaintiff, Scripps' response was sufficient under the law. It is well settled that "employers are not automatically liable for sexual harassment perpetrated by their employees." *Gallagher v. C.H. Robinson Worldwide, Inc*., 567 F.3d 263, 274 (6th Cir. 2009) (*citing Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)*; Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). When an employee alleges sexual harassment by co-workers, such as the case here where Plaintiff alleges harassment by a fellow meteorologist, the employer's liability hinges on the employee showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action. *Gallagher*, 567 F.3d at 274. When co-worker harassment is at issue, an employer can be liable only if its response to charges of harassment manifests indifference or unreasonableness in light of what the employer knew or should have known at the time. *Birone v. Indian River School*, No. 97-3212, 1998 WL 199791, *3 (6th Cir. April 15, 1998) ("[w]hen an employer implements a remedy, it can be liable for [harassment] in violation of Title VII only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination") (citing *Blankenship v. Parke Care Centers, Inc*., 123 F.3d 868 (6th Cir. 1997)). Here, Scripps investigated Plaintiff's report and took corrective action by issuing the male colleague disciplinary action. These are not the actions of an employer indifferent to harassment in the workplace. *Birone*, 1998 WL 199791 (employer not liable for hostile work environment where

- taking away job responsibilities and imposing new work requirements after [she] complained of gender discrimination.

(*Id.* ¶¶ 24, 41). As detailed above, all of these alleged discriminatory actions, with the exception of the allegation Scripps did not adequately respond to the "deepfake" email incident, took place in or before 2023. In other words, these alleged discriminatory actions took place well before June 4, 2024 and well outside the 300-day window Plaintiff had to file a charge.[10] Accordingly, Plaintiff's Title VII retaliation claim is time barred.[11] *See Granderson v. U. of Michigan*, 211 F.App'x 398, 401 (6th Cir. 2006)(affirming dismissal of the plaintiff's race discrimination and retaliation claims because he waited over 400 days before filing his charge of discrimination); *White v. Adena Health System*, No. 2:17-CV-593, 2018 WL 3377087, at *6 (S.D. Ohio July 11, 2018)(dismissing employee's Title VII retaliation claims because she failed to administratively exhaust her remedies because the EEOC correctly dismissed the charge as untimely).[12]

---

the defendant investigated the plaintiff's allegations and confronted the alleged wrongdoer); *Martin*, 244 F. Supp. 2d at 874 (employer not liable for hostile work environment where plaintiff's allegations of harassment were investigated and management spoke to employees about harassment); *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48 (6th Cir) (no liability where defendant reprimanded the alleged harasser)(*cert. denied* 519 U.S. 863 (1996)). Plaintiff's THRA hostile environment claim also fails on this basis.

[10] Plaintiff does not assert the "early" 2024 air quality issue in support of her intentional discrimination claim. Even if she attempted to do so, this allegation cannot form the basis of a Title VII discrimination claim because the allegation is not "based upon gender." In order to establish an employment action amounts to gender discrimination, a plaintiff must show that similarly situated individuals outside her protected category, i.e., males, were treated more favorably. Plaintiff does not allege that similarly situated male employees were treated differently. She does not allege that male employees requested and received special equipment. Plaintiff does not and cannot allege that only female employees were subject to poor air conditions. *See Monak*, 95 F.App'x at 764. As a result, Plaintiff's allegation regarding the air quality at the station cannot form the basis of a gender discrimination claim. *Id.*

[11] Plaintiff likewise cannot rely on the continuing violation doctrine to salvage her claim. The doctrine does not apply where a plaintiff challenges a series of discrete acts, each of which was independently actionable at the time it occurred. *See Brown v. Louisville-Jefferson Cnty. Metro Govt.,* 135 F.4th 1022, 1035 (6th Cir. 2025)("if the defendant's separate acts of [alleged] wrongdoing are individually actionable, the continuing-violation doctrine does not apply.").Here, the alleged conduct consists of discrete events of which Plaintiff was aware when they took place, and thus any attempt to invoke the continuing violation doctrine is unavailing.

[12] *See also San Han v. University of Dayton*, 541 F.App'x 622, 628 (6th Cir. 2013)(affirming dismissal of the plaintiff's claim as untimely where his EEOC charge was filed more than 300 days of his being notified of termination); *Jenkins v. Metro Bd. of Education*, No. 3:12–0062, 2012 WL 874718, *2-3 (M.D. Tenn. March 14, 2012) (dismissing the plaintiff's ADA and Title VII claims where she failed to file an EEOC charge within 300 days of her termination)

As for Plaintiff's allegation regarding Scripps' response to the "deepfake" email incident in October 2024, Plaintiff's own Complaint establishes Scripps' response was not gender based. According to Plaintiff, Scripps responded by doing the same thing for her that Scripps did for a similarly situated male employee, Williams. (Dkt.. 1 ¶ 51). Scripps responded by indicating they would block the emails as they did for Williams when he was faced with death threats via email. (Id.). In order to establish gender-based discrimination, Plaintiff must allege that Scripps took action, or failed to take action, based upon her gender. She needs to plead facts suggesting a similarly situated individual outside her protected category was treated more favorably. *Wollor v. Collins Aerospace H.Q.,* No. 3:23-CV-306-CHB, 2024 WL 25097, at *5 (W.D. Ky. Jan. 2, 2024)(granting employer's motion to dismiss because the plaintiff did not plausibly allege that his white co-worker was treated more favorably than he was). Here, Plaintiff's own allegations show that Scripps responsive action was the same as its responsive action in a similar situation involving a male employee. As a result, Scripps responsive action is not gender based and cannot form the basis of an intentional discrimination claim. *See Monak*, 95 F.App'x at 764 (affirming dismissal of gender discrimination claim because everyone, man or woman, was treated the same way as the plaintiff).

Plaintiff's Title VII intentional discrimination claim is untimely and as a result, should be dismissed for failure to state a claim upon which relief can be granted.

### 2. *Plaintiff failed to plead any retaliatory conduct within the 300-day window.*

According to Plaintiff's Complaint, she made a report of discriminatory and harassing conduct to Human Resources in 2022 and "in the wake" of the investigation of her report, she was retaliated against. (Dkt. 1 ¶¶ 24, 41). Plaintiff alleges Scripps retaliated against her by:

- reducing [her] role and influence at NewsChannel 5;

- discounting [her] role in co-writing the weather team schedule and coordinating community events;
- imposing new work and scheduling requirements on [her]; and
- advising her not to engage in further protected activities.

(*Id.* ¶ 76).

According to Plaintiff's Complaint, these alleged retaliatory actions took place in October 2022, "within a few months" of her report to Human Resources, and at the latest in 2023, which was "shortly after [her] community engagement role was taken" and the male colleague she reported was allowed to lead the DEI program. (*Id.* ¶¶ 41-42). These alleged retaliatory actions took place well before June 4, 2024 and well outside the 300-day window Plaintiff had to file a charge.[13] Accordingly, Plaintiff's Title VII retaliation claim is time barred. *San Han,* 541 F.App'x at 628 (affirming dismissal of the plaintiff's claim as untimely where his EEOC charge was filed more than 300 days of his being notified of termination); *Aldridge,* 2008 WL 11417500 at *2-3 (dismissing the plaintiff's claims as untimely where he failed to file his EEOC charge within 300 days of adverse action); *Jenkins*, 2012 WL 874718 at *2-3 (dismissing the plaintiff's ADA and Title VII claims where she failed to file an EEOC charge within 300 days of her termination).

Plaintiff's Title VII retaliation claim is untimely and as a result, should be dismissed for failure to state a claim upon which relief can be granted.

### B. Plaintiff's THRA Claims Are Barred by the Statute of Limitations.

Similarly, Plaintiff's intentional discrimination/fourth claim, retaliation/fifth claim, and hostile work environment/sixth claim are subject to dismissal because they are untimely.

---

[13] The only allegations included in Plaintiff's Complaint that fall within the 300-day window would be Plaintiff's "early" 2024 air quality allegation and October 2024 "deepfake" allegation. However, Plaintiff does not assert these allegations amount to retaliation. (*Id.* ¶¶ 40-44, 76). Nor could she as these alleged actions took place two (2) and three (3) years after her report to Human Resources. *Mustafa v. Ford Motor Co.*, 691 F. Supp. 3d 796, 804 (E.D. Mich. 2023)(granting employer's motion to dismiss because the temporal proximity of ten (10) months between employee's complaint to the EEOC and his termination was insufficient to establish causation element of his retaliation claim).

THRA claims are subject to a one-year statute of limitations. Tenn. Code Ann. 4-21-311 (d); *Walker v. Town of Greenville*, 347 F. Supp. 2d 566, 569 (E.D. Tenn. 2004). The statute of limitations is not tolled by the filing of a charge with the EEOC. *Id.; see also Martin v. Boeing-Oak Ridge Co.*, 244 F. Supp. 2d 863, 871 (E.D. Tenn. 2002). As detailed above, the allegations cited by Plaintiff in support of her THRA intentional discrimination and hostile environment claims all occurred in or before 2023, with the exception of the "deepfake" email response allegation, which by Plaintiff's own assertion is not gender based and thus, cannot form the basis of a gender discrimination claim.[14] Likewise, the allegations cited by Plaintiff in support of her THRA retaliation claim all occurred in 2022 and at the latest 2023. Plaintiff filed her Complaint on December 29, 2025, well outside the one-year statute of limitations applicable to her THRA intentional discrimination, hostile work environment and retaliation claims. As a result, Plaintiff's THRA claims are subject to dismissal.

**C.      Plaintiff's Intentional and Negligent Infliction of Emotional Distress Claims are Subject to Dismissal**

Plaintiff's intentional and negligent infliction of emotional distress/eighth and ninth claims ("IIED/NIED") fail for a number of reasons.

First, these claims are also subject to a one-year statute of limitations. *Clark v. G4S Gov't. Cols., Inc.*, 2014 WL 1154228, *16 (E.D. Tenn. Mar. 21, 2014); *Burnett v. Tyco Corp.*, 932 F. Supp. 1039, 1043 (W.D. Tenn. 1996). Thus, all of Plaintiff's allegations other than the "deepfake" email response are time barred.

---

[14] Plaintiff's claims also fail because her own allegations negate employer liability under Title VII and the THRA. The Complaint alleges that after Plaintiff reported the conduct, Scripps investigated her report and took disciplinary action. Those allegations establish that Scripps took prompt remedial action in response to the report, which forecloses employer liability as a matter of law. *Newton v. Ohio Dept. of Rehab. and Correction-Toledo Correctional Inst.*, 496 F.Appx. 558, 566 (6th Cir. 2012)(affirming dismissal of hostile work environment claim because the defendant promptly investigated and responded to the plaintiff's alleged sexual harassment complaint).

Second, Plaintiff's IIED/NIED claims are subject to dismissal because her Complaint does not contain facts sufficient to give rise to such a claim. To establish a claim of IIED/NIED, Plaintiff must prove: (1) the conduct complained of was intentional/negligent or reckless; (2) the conduct was so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of resulted in serious mental injury. *Bain v. Wells*, 936 S.W.2d 618 (Tenn. 1997); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "A plaintiff's burden to demonstrate outrageous conduct is not an easy burden to meet." *Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 704 (Tenn. Ct. App. 2012). The Tennessee Supreme Court has endorsed the "high threshold" of the Restatement (Second) of Torts:

> "The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'"

*Id.* (quoting *Bain*, 936 S.W.2d at 622-23 (quoting *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966)).

Plaintiff's claim fails because she has not pled facts sufficient to establish any intent, negligence, or recklessness upon the part of Scripps. Plaintiff recites the elements of her claims, but that is not sufficient to overcome dismissal where the allegations included in the Complaint do not reflect any intent, negligence, or recklessness whatsoever. Rather, the factual allegations in the pleadings establish Scripps had an anti-harassment policy in place. Additionally, once a report of harassment was actually made, Scripps took immediate action and reasonable disciplinary action

was issued. Likewise, when Plaintiff reported the "deepfake" email incident, Scripps responded by blocking the emails. Given Plaintiff's own factual allegations, her IIED/NIED claims are legally insufficient and subject to dismissal. *Bazemore v. Performance Food Group, Inc.*, 478 S.W.3d 628 (Tenn. Ct. App. 2013)(dismissing emotional distress claims where the employer took action upon learning of harassment).

Further, liability for IIED/NIED is found only in the most egregious of situations. *See, e.g.*, *Johnson v. Woman's Hosp.*, 527 S.W.2d 133, 140 (Tenn. Ct. App. 1975) (affirming verdict, where defendant had preserved the body of a premature stillborn infant in a jar of formaldehyde and displayed the jar to the mother); *Dunbar v. Strimas*, 632 S.W.2d 558 (Tenn. Ct. App. 1981) (holding that summary judgment of intentional infliction of emotional distress claim was inappropriate where, after examining a nineteen month old baby found dead in its crib, the county medical examiner told the parents details of his findings indicating the child's sexual abuse and murder, despite knowing that the mother had experienced a nervous breakdown).

Tennessee courts have indicated that trial courts should be wary of permitting infliction of emotional distress claims to move forward in employment cases, absent exceptional allegations and general allegations of harassment typically do not rise to the level of outrageous conduct necessary to establish such a claim. *See e.g., Fonseca v. Golden Living Center-Mountainview*, 2010 WL 3155984, *6-7 (E.D. Tenn. Aug. 10, 2010) (granting the defendant's motion to dismiss the plaintiff's intentional infliction of emotional distress claim for failure to state a claim where the plaintiff provided general statements that she experienced "unwarranted comments and abusive conduct by her supervisors" based on her gender that "constituted harassment and were severe to the extent that they altered the terms and conditions of [her] working environment" and that the defendant wrongfully terminated her employment due to her age and gender.); *Stacy v. MVT Servs.,*

*LLC*, No. 3:11-CV-01241, 2012 WL 2281495, at *8 (M.D. Tenn. June 18, 2012) ("It is clear that not every sexual harassment claim will automatically give rise to an IIED claim, even though, to some extent, all instances of sexual harassment can be considered outrageous" *citing Arnett v. Domino's Pizza, I, LLC*, 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003)); *Powell–Lee v. HCR Manor Care*, 231 F.App'x 438 (6th Cir.2007) (employer not liable for infliction of emotional distress to plaintiff allegedly resulting when fellow employee exposed himself to her; conduct clearly outside scope of employer's business and in violation of employer's work policies); *DeSoto v. Bd. of Parks & Recreation*, 64 F. Supp. 3d 1070, 1096 (M.D. Tenn. 2014) ("Thus, even where courts permit claims of harassment or retaliation to proceed under state and federal statutes, courts will not permit IIED claims to proceed in most employment discrimination cases; this approach applies even where a defendant or its employees engaged in highly reprehensible conduct or otherwise intended to cause the plaintiff to suffer emotional distress.").

What's more, Tennessee courts have routinely rejected the notion that allegations of adverse employment actions support such claims. *See Godfredson v. Hess & Clark Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) ("An employee's termination, even if based on discrimination, does not rise to the level of extreme and outrageous conduct without proof of something more. If such were not true, then every discrimination would simultaneously become a cause of action for the intentional infliction of emotional distress."); *Johnson v. BellSouth Telecommunications, Inc.*, 2012 WL 899325 (E.D. Tenn. March 14, 2012) (dismissing the plaintiff's intentional infliction of emotional distress based upon his allegedly retaliatory termination noting Tennessee courts have not "recognized that an employee's termination satisfies the requisite elements for outrageous conduct."); *Mays v. Int'l Mill Servs., Inc.*, No. 05–1367–T/AN, 2006 WL 208874, at *4–5 (W.D. Tenn. Jan.26, 2010) (factual allegations of wrongful discharge and discrimination failed to meet

very high standards for outrageous conduct in Tennessee). Thus, only Plaintiff's allegations of harassment should be considered by the Court for purposes of her intentional/negligent infliction of emotional distress claims.

Plaintiff's Complaint is void of any factual allegations of harassment sufficient to sustain a claim for intentional/negligent infliction of emotional distress, and it is for this Court to determine whether Plaintiff's harassment allegations may reasonably be regarded as extreme and outrageous. *Brown*, 393 S.W.3d at 704 ("It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so"); *Miller v. Currie*, 50 F.3d 373, 377–78 (6th Cir.1995) (It "is well accepted that intentional infliction of emotional distress claims may entirely appropriately be dealt with...in a motion to dismiss."). Plaintiff does not allege any action by Scripps that rises to the level of so outrageous it goes beyond that which is tolerated by a civilized society. Plaintiff alleges her co-worker made a handful of inappropriate comments in 2022 that do not rise to the level of extreme and outrageous conduct. Upon Plaintiff's report of such, Scripps investigated and issued disciplinary actions, which is what is expected under the law and its own policy. Plaintiff's allegations are simply not "so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."

Plaintiff has failed to state a claim upon which relief may be granted and thus, her intentional/negligent infliction of emotional distress claims should be dismissed.[15]

### D. Plaintiff's Title VII and THRA Constructive Discharge Claims are Subject to Dismissal.

Plaintiff's Title VII and THRA constructive discharge/third and seventh claims are subject

---

[15] Third, Plaintiff's IIED/NIED claims are precluded by the Tennessee Workers Compensation Act ("TWCA"). The TWCA provides employees with their exclusive remedy against their employers for work-related injuries. *Lang v. Nissan N.A., Inc.*, 170 S.W.3d 564, 572 (Tenn. 2005).

to dismissal for failure to state a claim upon which relief may be granted.

### 1. *Plaintiff's Title VII constructive discharge claim must be dismissed because she failed to exhaust her administrative remedies.*

Scripps is entitled to dismissal of Plaintiff's Title VII constructive discharge claim because Plaintiff failed to exhaust her administrative remedies with respect to such a claim. Plaintiff's Charge does not mention or otherwise allege that she was constructively discharged. It is well-settled that employees who allege they have been victims of discrimination must exhaust their administrative remedies. *Benford v. Frank,* 943 F.2d 609, 612 (6th Cir. 1991) (stating "[t]he right to bring an action under Title VII regarding equal employment in the federal government is predicated upon the timely exhaustion of administrative remedies ..."); *Hall v. U.S. Postal Serv.,* 857 F.2d 1073, 1078 n. 4 (6th Cir. 1988).

The general rule in the Sixth Circuit is that "[f]ederal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge." *Albeita v. TransAm. Mailings, Inc.,* 159 F.3d 246, 254 (6th Cir.1998), *reh'g & suggestion* for *reh'g* en banc *denied* (Dec. 23, 1998). Such "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown,* 466 US 147, 152 (1984). Jurisdictional filing requirements may not be set aside just because a plaintiff initiates an action without the assistance of counsel and is unfamiliar with the mechanics of Title VII. *Askew v. Stone,* 81 F.3d 160 (6th Cir. 1996) ("Despite the fact that Askew initiated this action without the assistance of counsel and was unfamiliar with Title VII's procedural requirements, she failed to comply with the strict procedural and time limitations imposed by statute.")

To determine whether a plaintiff exhausted his or her administrative remedies, the Sixth

Circuit applies the "expected scope of investigation test." *Spengler v. Worthington Cylinders,* 615 F.3d 481, 490 (6th Cir. 2010). This test states that the complaint "must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Tartt v. City of Clarksville,* 149 F.App'x 456, 461 (6th Cir.2005) "Pursuant to this rule, [the Sixth Circuit] ha[s] recognized that where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Weigel v. Baptist Hosp. of E. Tenn.,* 302 F.3d 367, 380 (6th Cir.2002)). Under this test, a plaintiff must "have alleged sufficient facts in his or her EEOC complaint to put the EEOC on notice of the other claim even though the plaintiff failed to check the appropriate box on the EEOC's complaint form." *Spengler,* 615 F.3d at 490. As such, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Younis v. Pinnacle Airlines, Inc.,* 610 F.3d 359, 362 (6th Cir. 2010).

Here, Plaintiff's constructive discharge claim fails at the threshold because her Charge contains no allegation that she was forced to resign due to objectively intolerable working conditions.[16] Further, Plaintiff's Charge, which was filed on March 27, 2025, two months after she resigned, specifically identifies the "date(s) discrimination took place" as "10/7/2017" to "12/1/2024."

If Plaintiff believed that her resignation constituted a constructive discharge, she had every opportunity to say so in her Charge.[17] Her failure to do so deprived the EEOC of the opportunity

---

[16] To the contrary, the only reference to Plaintiff's departure appears in a single statement that "up to my departure in January 2025, [Scripps] discriminated and retaliated against me in violation of Title VII of the Civil Rights Act of 1964 . . . and the Tennessee Human Rights Act. . ." This passing reference does not allege that Plaintiff was compelled to resign or that her working conditions were intolerable. Nor does it otherwise suggest that Plaintiff believed she had been constructively discharged.

[17] Retaliation claims are generally excepted from this filing requirement because they usually arise after the filing of the EEOC charge. *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 547 (6th Cir.1991). However, this exception to the

to investigate whether her resignation was allegedly compelled by unlawful conduct and likewise deprived Scripps of notice that such a theory would later be asserted in litigation. As such, her claim should be dismissed on this basis alone. *See Williams v. White Castle System, Inc.*, 526 F. Supp. 2d 830, 834 (M.D. Tenn. 2007)(finding counsel's conduct sanctionable where he moved to amend the complaint to add a constructive discharge claim even though the plaintiff filed her EEOC charge after leaving her employment and the charge made no reference to constructive discharge).

### 2. *Plaintiff failed to plead plausible claims for Title VII and THRA constructive discharge.*

Furthermore, Plaintiff's Title VII and THRA constructive discharge claims fail because she failed to plead facts plausibly demonstrating that she was subjected to working conditions so objectively intolerable that a reasonable person in her position would have felt compelled to resign.[18] Instead, Plaintiff's constructive discharge theory merely repackages the same allegations underlying her discrimination, harassment, and retaliation claims.

A constructive discharge claim carries a demanding standard. To plausibly plead constructive discharge, a plaintiff must allege facts showing that: (1) the employer deliberately created working conditions that were objectively intolerable, as perceived by a reasonable person; and (2) the employer did so with the intent to force the employee to resign or that resignation was

---

filing requirement does not apply to retaliation claims based on conduct that occurred before the EEOC charge was filed. *Id.*

[18] Furthermore, to the extent Plaintiff is attempting to assert constructive discharge claims separate and apart from her overarching Title VII and THRA claims, her standalone constructive discharge claims should be dismissed because they are not separate actions under the THRA or Title VII. *Rositano v. Freightwise, LLC*, No. 3:20-CV-00420, 2021 WL 1174589, at *6 (M.D. Tenn. Mar. 26, 2021); *Franovich v. Hanson*, 687 F. Supp. 3d 670, 687 (D. Md. 2023)(granting motion to dismiss and holding "that a constructive discharge claim is not a standalone claim but instead may satisfy the adverse employment action element of a discrimination or retaliation claim."); *Corbett v. Harvey*, No. 2:06-C-761, 2008 WL 731487, at *11 (S.D. Ohio Mar. 17, 2008)( "[c]onstructive discharge is not itself a cause of action, but rather a means of providing the element of an adverse employment action where the employee resigns instead of being fired.")(collecting cases); *Seay v. Fortune Plastics, Inc.*, No. 3:09-CV-0605, 2012 WL 610006, at *5 (M.D. Tenn. Feb. 24, 2012)(*quoting Bryant v. Skyline Properties, Inc.,* No.3:05–CV–2503–G, 2006 WL 708647 at *2 (N.D. Tex. Mar.20, 2006).

a reasonably foreseeable consequence of the employer's actions. *Cleveland v. S. Disposal Waste Connections*, 491 F.App'x 698, 708 (6th Cir. 2012) (*quoting Logan v. Denny's Inc*., 259 F.3d 558, 568–69 (6th Cir. 2001)); *Smith v. Henderson*, 376 F.3d 529, 533 (6th Cir. 2004). The Sixth Circuit repeatedly emphasizes that constructive discharge requires working conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Wilson v. Firestone Tire & Rubber Co.,* 932 F.2d 510, 515 (6th Cir. 1991)(internal quotations and citation omitted). Ordinary workplace disputes, criticism, dissatisfaction with assignments, or even alleged discriminatory acts, without more, do not suffice. *See Smith*, 376 F.3d at 533-34.

Further, because constructive discharge requires a showing of severity beyond that necessary to establish an underlying discrimination or harassment claim, a plaintiff must plead additional facts demonstrating truly intolerable conditions, conditions that effectively leave no reasonable alternative but resignation. *Wilson*, 932 F.2d at 515. This standard is objective: the question is whether a reasonable employee in the plaintiff's position would have felt compelled to resign, ***not whether the plaintiff subjectively felt aggrieved***. *Green v. Brennan*, 578 U.S. 547, 555 (2016). Where a complaint merely lists alleged acts of discrimination or harassment but fails to allege facts plausibly demonstrating that the working conditions were objectively severe and intolerable, dismissal under Rule 12(b)(6) is appropriate. *See Bender v. Gen. Dynamics Land Sys., Inc.,* No. 2:19-CV-13177, 2020 WL 4366049, at *3 (E.D. Mich. July 30, 2020)(granting employer's motion to dismiss because the plaintiff did not adequately allege that she was constructively discharged from her position at General Dynamics "because she [did] not [plead] facts that rise to the level of intolerable working conditions.").

The Sixth Circuit has recognized that "constructive discharge can take on two different forms." *Laster v. City of Kalamazoo,* 746 F.3d 714, 728 (6th Cir. 2014). The first occurs "[w]hen

an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge." *Id.* (emphasis and internal quotation marks omitted). Plaintiff does not allege in her Complaint that Scripps engaged in any conduct communicating that she would be terminated. Rather, she apparently asserts the second form, when an employee resigns because of discriminatory harassment/conduct. *Id.* For such claims, the plaintiff must "demonstrate a discriminatory work environment ***even more egregious than the high standard for hostile work environment***." *Id.* (internal quotation marks omitted and emphasis added).

Constructive discharge claims fail where a plaintiff merely alleges workplace conflict, dissatisfaction with management decisions, or repackages the same alleged conduct underlying other employment claims such as discrimination and harassment, rather than alleging objectively intolerable working conditions that would compel a reasonable employee to resign. *See Cooper v. Jackson-Madison Cnty. Gen. Hosp. Dist.,* 742 F. Supp. 2d 941, 956 (W.D. Tenn. 2010) ("[t]he bar for proving constructive discharge is higher than that for a hostile work environment claim. . ."); *Spann v. Tennessee Dept. of Correction*, No. 1:25-CV-00005, 2026 WL 458295, at *6 (M.D. Tenn. Feb. 17, 2026)("Harassment alone is also not sufficient" to establish constructive discharge); *Dendinger v. Ohio,* 207 F.App'x 521, 527 (6th Cir. 2006) (holding that even if the employer created a hostile environment by permitting supervisors to make sexual overtures toward her and being condescending, rude and mean to her, such allegations did not rise above the level of ordinary discrimination, as required for employee's hostile-environment constructive discharge claim); *Ragland v. F & M Koz, Inc.,* No. 221CV02530TLPCGC, 2022 WL 945317, at *8 (W.D. Tenn. Mar. 29, 2022)(granting motion to dismiss constructive discharge claim because the complaint failed to state a claim for hostile work environment and for plaintiff's claim for

constructive discharge to proceed, he must allege conduct even more egregious than the high standard for hostile work environment); *Gilhooly v. UBS Securities, LLC*, 772 F. Supp. 2d 914, 918 (N.D. Ill. 2011)(granting motion to dismiss because the plaintiff's criticism and harassment allegations lacked the required factual severity of conduct necessary for a constructive discharge claim); *Roadman v. Select Specialty Hosp.,* No. 3:16-CV-246, 2017 WL 4236581, at *4 (W.D. Pa. Sept. 22, 2017) (granting motion to dismiss and stating "[w]hile this Court offers no opinion as to whether the allegations in the Complaint are sufficient to make out a 'basic' hostile work environment claim, these allegations are insufficient to make out a claim for constructive discharge.")

Here, Plaintiff alleges no facts demonstrating working conditions so objectively intolerable that a reasonable person in her position would have felt compelled to resign, nor does she plausibly allege that Scripps deliberately created such conditions with the intent of forcing her to quit. Instead, Plaintiff's constructive discharge claim merely repackages the same alleged workplace conflicts and grievances and dissatisfaction with management decisions that form the basis of her discrimination, retaliation, and harassment claims. At most, Plaintiff's Complaint alleges that in or before 2022, a male co-worker made a handful of inappropriate comments, male colleagues did not work as hard or as much as she worked,  she was occasionally required to work longer hours or assume additional responsibilities, she had to work from home when she was sick with COVID-19, she had to meet with a stylist who allegedly made inappropriate comments, and that she disagreed with Scripps' investigation and disciplinary response to her report of such. These allegations fall well short of the "objectively intolerable" conditions required to sustain a constructive discharge claim. *See Dendinger,* 207 F.App'x at 527.

Plaintiff's allegations of retaliation fare no better. Her assertion that management removed

certain responsibilities from her, imposed additional reporting requirements and allowed a male co-worker who allegedly made inappropriate comments to lead the diversity committee reflect, at most, workplace disputes and perceived unfairness in management decisions. *Blackburn v. Shelby Cnty.*, 770 F. Supp. 2d 896, 920 (W.D. Tenn. 2011)("a mere change in [employee's] responsibilities does not amount to an adverse employment action."); *Lee v. Cleveland Clinic Found.,* 676 F.Appx. 488, 494 (6th Cir. 2017)("[i]ncreased surveillance and discipline, whether warranted or not, do not constitute a material adverse change). The fact that Plaintiff's grievances occurred in or before 2022, two (2) or more years prior to her resignation further highlights the fact she was not subject to "objectively intolerable" conditions. *See Lavack v. Owen's World Wide Enter. Network, Inc.,* 409 F. Supp. 2d 848 (E.D. Mich. 2005)(finding employee's constructive discharge claim was not causally linked to his sexual harassment complaints, and he thus failed to establish *prima facie* case of retaliation under Title VII, where he made his first complaint two years before altercation, he made his last complaint four months before altercation).

Finally, the event that appears to have actually prompted Plaintiff's resignation, her receipt of emails from a viewer about purported "deepfake" images cannot plausibly support a constructive discharge claim under Title VII or the THRA. Because constructive discharge is not an independent claim but a theory under which she can claim an adverse employment action under Title VII and/or the THRA, the underlying conduct in question by Scripps must be gender based. As detailed previously, Plaintiff's own allegations evidence Scripps treated her the same as a similarly situated male employee. Scripps recommended the same action in response to Plaintiff's "deepfake" email from a viewer that it recommended when a male employee received similarly, but arguably more egregious death threat emails from a viewer. Scripps' conduct of treating a male and female employee the same cannot sustain a gender based claim under Title VII or the THRA.

*See Monak*, 95 F. App'x at 764.

Moreover, Plaintiff does not allege that Scripps, or anybody employed by Scripps, created, distributed, or encouraged the "deepfake" images. Scripps engaged with Plaintiff regarding her concerns but lacked the ability to control the third-party's actions as he was not a Scripps employee. Scripps, however, did respond that the company would block the third party's emails as they had for a male employee facing similar, and arguably more egregious, emails from a third party. At best Plaintiff alleges that this was not enough and Scripps should have taken further action on her behalf. But an employee's dissatisfaction with an employer's response to a complaint does not transform otherwise ordinary workplace issues into objectively intolerable working conditions. *See Webster v. Town of Warsaw*, 66 F. Supp. 3d 706, 710 (E.D.N.C. 2014)(granting motion to dismiss in part because an employee's dissatisfaction with an employer's response (or lack thereof) to complaints does not transform ordinary workplace issues into objectively intolerable conditions sufficient for constructive discharge).

Critically, Plaintiff does not allege that Scripps forced her to resign, presented her with an ultimatum, reduced her compensation, threatened termination, or otherwise left her with no reasonable alternative but to end her employment. To the contrary, Plaintiff alleges only that she concluded the company would not address her concerns to her subjective satisfaction and ultimately resigned rather than renewing her contract. Because Plaintiff alleges nothing more than workplace conflicts, disagreement with management decisions, and the same conduct underlying her claims of Title VII and THRA discrimination, retaliation, and hostile work environment, she fails to plausibly allege the type of extreme and deliberate working conditions required to support a constructive discharge claim. As such, Plaintiff's Title VII and THRA claims should be dismissed.

## IV.  CONCLUSION

For the reasons set forth herein, Defendant, Scripps Media, Inc. d/b/a WTVF News Channel 5, respectfully requests that this Court grant its Motion to Dismiss Plaintiff's Complaint in its entirety.

Date: March 27, 2026

Respectfully submitted,

*s/Mary Dohner Smith*

Mary Dohner Smith, TN BPR #021451
mdohner@constangy.com
Rachael Rustmann, TN BPR #037432
rrustmann@constangy.com
**Constangy, Brooks, Smith & Prophete, LLP**
Highland Ridge 2
555 Marriott Drive, Suite 315
Nashville, TN 37214
Phone: (615) 340-3804

*Attorneys for Defendant Scripps Media, Inc. d/b/a WTVF News Channel 5*

14296995v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 27 th day of March 2026, I electronically filed the foregoing DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS with the Clerk of the Court, which will send electronic notification of such filing to the following:

John T. Spragens
john@spragenslaw.com
David O. Kieley
dave@spragenslaw.com
Spragens Law PLC
915 Rep. John Lewis Way South
Suite 100
Nashville, TN 37203
(615) 983-8900


*s/ Mary Dohner Smith*
Mary Dohner Smith

14296995v1