# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| Bree Smith Friedrichs, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:25-cv-01494 |
| | ) | Judge Eli J. Richardson |
| Scripps Media, Inc. d/b/a/ WTVF | ) | Magistrate Barbara D. Holmes |
| News Channel 5, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant Scripps Media, Inc. d/b/a WTVF News Channel 5 ("Scripps"), pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Amended Complaint. As explained below, Plaintiff's claims fail as a matter of law based on uncurable threshold procedural defects and her repeated failure to plead facts sufficient to state a plausible claim for relief.

## I. INTRODUCTION

Plaintiff's claims are subject to dismissal for multiple independent reasons. Her Title VII claims are untimely because her EEOC charge was filed more than 300 days after any alleged discriminatory, harassing, or retaliatory conduct, and her THRA and state law claims are likewise barred by the applicable statutes of limitations. In addition, Plaintiff fails to allege facts sufficient to state any plausible claim for relief, including her claims for discrimination, hostile work environment, and retaliation. Her constructive discharge claim independently fails because she did not exhaust administrative remedies, it is not a standalone cause of action, and she does not allege objectively intolerable working conditions. Despite a second opportunity to cure these deficiencies, Plaintiff's Amended Complaint merely repackages the same conclusory allegations and still fails to state a claim

upon which relief can be granted.

## II.    <u>FACTUAL ALLEGATIONS</u>[1]

Plaintiff began working for Scripps as a meteorologist in 2016. She remained working as a meteorologist until January 2025, when she elected to resign rather than renegotiate her employment contract. (Doc. 17, Am. Compl. ¶¶ 2, 7). Plaintiff's Amended Complaint alleges that she was subjected to discriminatory and harassing conduct that ultimately forced her resignation. Specifically, she contends that she was subjected to obscene, sexist, and abusive behavior from a male colleague, as well as unwarranted, degrading, and unequal scrutiny of her physical appearance by an industry style consultant. She alleges that she was required to work unscheduled and excessively long hours under difficult conditions to compensate for male colleagues' incompetence or absences, while being denied requests for leave.[2] Plaintiff also asserts that Scripps did not do enough to protect her from "deepfake" images sent by a member of the public. She also claims that after raising complaints of gender discrimination, her job responsibilities were reduced, her role and influence diminished, and new work requirements were imposed, including the removal of her involvement in co-writing the weather team schedule and coordinating community events. Finally, she alleges that she was instructed to direct concerns to local management rather than corporate offices for investigation and resolution. (*Id.* ¶¶ 83, 115).[3]

Plaintiff's actual factual allegations are as follows:

- Between 2017 and 2022, a male coworker made a handful of inappropriate comments

---

[1] Scripps references these allegations solely as pled in the Amended Complaint for purposes of this Motion to Dismiss and does not admit their truth. Scripps denies the vast majority of Plaintiff's allegations, many of which are frivolous in nature in that they are blatantly false.

[2] Plaintiff's Amended Complaint references an approved and taken leave of absence but does not identify any specific leave request that was denied, instead relying on vague allegations that unidentified requests were not granted. (Doc. 17 ¶ 28, 52).

[3] Notably, the allegations Plaintiff relies upon to support constructive discharge are the very same allegations underlying her discrimination, retaliation, and hostile work environment claims. (*See id.* ¶¶ 68, 77, 83, 90, 94, 115, 120, 125).

toward her and other female employees.[4] (*Id.* ¶¶ 20-24).

- In 2020 and 2021, Scripps gave her more job duties. (*Id.* ¶ 26).
- In 2020 during a severe weather event, a male colleague left the station and did not work overtime while Plaintiff worked sixteen hours straight. (*Id.* ¶ 28).
- In 2021, she was required to broadcast from home when she was positive with COVID-19. (*Id.* ¶ 29).
- She was required to attend meetings with a stylist who, according to Plaintiff, made comments criticizing and discussing women's bodies in an inappropriate manner. (*Id.* ¶¶ 30-31).
- She reported the above issues to Human Resources in 2022. (*Id.* ¶¶ 23-24).
- Scripps conducted an investigation in accordance with its own internal policy, attached as Exhibit A.[5] The male colleague was issued a disciplinary letter, and female employees were advised to report any further issues directly to station management. (*Id.* ¶¶ 33-36).
- Following the investigation in 2022, Scripps removed Plaintiff's scheduling responsibilities, required her to submit an agenda for the community engagement work she performed outside the studio on Fridays and required her to send emails advising of the work she performed outside the studio. (*Id.* ¶ 41).
- In 2023, a male colleague slept through an evening broadcast without consequence. (*Id.* ¶ 27).
- In 2023, Plaintiff was contacted while on vacation to cover during a severe weather event when a male colleague was found lying on the floor. (*Id.* ¶ 28).
- In 2023, the male colleague about whom Plaintiff complained was allowed to lead the DEI program. (*Id.* ¶42).

Plaintiff's Amended Complaint contains only one alleged incident occurring within the year leading up to her resignation in January 2025. Plaintiff alleges that in October 2024, she received emails from a viewer warning her sexually suggestive "deepfake" images of her were circulating online; she reported those emails to station leadership, who responded they would block the emails as they did when a male employee, Phil Williams, received death threats,[6] and as a result of the "deepfake" emails,

---

[4] Plaintiff does not allege any specific comments made by the male co-worker after 2022.

[5] That policy expressly prohibits all forms of harassment and retaliation against employees who report harassment and requires that all such reports be investigated promptly and in as confidential a manner as possible. (Exhibit A.). The policy is attached herein as a document specifically referenced in the Complaint but was not attached to the Complaint.

[6] It is important to note that Plaintiff's own allegations evidence Scripps treated her the same as a similarly situated male employee. Scripps recommended the same action, that the emails be blocked, for both Plaintiff as a female and Williams as a male. As a result, Scripps' action in response to the "deepfake" cannot be deemed to be "based upon gender" as required to support a Title VII and/or THRA claim. *See Monak v. Ford Motor Co.*, 95 F.App'x 758, 764 (6th Cir. 2004). Accordingly, Plaintiff's allegation regarding Scripps' response to a viewer's emails about alleged "deepfake" images is of no

she took leave due to worsening depression, anxiety, and insomnia at the end of October 2024. (*Id.* ¶ 45, 47-48, 51).[7] Plaintiff alleges that she concluded that the company would not address her concerns and ultimately declined to renew her contract in January 2025. (*Id.* ¶ 53).

It is also important to note what Plaintiff has still failed to allege in her Amended Complaint. Critically, even with her second bite at the apple, Plaintiff does not allege that Scripps forced her to resign, refused to extend or renegotiate her contract, presented her with an ultimatum, or otherwise engaged in conduct leaving her with no reasonable alternative but to quit. The Amended Complaint relies on the same underlying allegations as the original and identifies no new incidents of harassment within the limitations period. Recasting her stale allegations does not cure the deficiencies or render her claims timely or plausible.

## III.    STANDARD OF REVIEW

### A.      Motion to Dismiss Standard

When reviewing a motion under Rule 12(b)(6), the Court determines whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Pleasant-Bey v. Shelby County Government*, No. 2:17-cv-02502, 2019 WL 5654993, at *1 (W.D. Tenn. Oct. 31, 2019) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In doing so, the Court

---

consequence and should be disregarded by the Court.

[7] Plaintiff alleges that in 2024, poor air quality in the station negatively impacted her health and that Scripps failed to purchase an air-filtering system to improve the air quality. (*Id.* ¶ 31) It is interesting that Plaintiff retained this allegation in her Amended Complaint when she is well aware that it is blatantly false. Perhaps that is the reason Plaintiff does not cite this allegation as the basis for any of her claims. (*Id.* ¶¶ 66-127) Plaintiff did not even list this allegation as one of the reasons she felt compelled to resign. (*Id.* ¶¶ 83, 90, 115) Regardless, this allegation cannot form the basis of Plaintiff's Title VII or THRA claims because the allegation is not "based upon gender." Plaintiff does not allege that male employees requested or received special equipment, or that only female employees were subject to poor air conditions. *See Monak*, 95 F.App'x at 764 (affirming dismissal of gender discrimination claim because everyone, man or woman, was treated the same way as the plaintiff). As a result, Plaintiff's allegation regarding the air quality at the station is of no consequence and should be disregarded by the Court.

construes the complaint in a light most favorable to the plaintiff, accepting factual allegations as true, and drawing all reasonable inferences in favor of the plaintiff. *Pleasant-Bey*, 2019 WL 5654993 at *2 (*citing DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

Further, there are two "working principles" governing a motion to dismiss. *Iqbal*, 556 U.S. at 678. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is **inapplicable to legal conclusions**." *Id. emphasis added*. Instead, a court considering a motion to dismiss should only accept **factual allegations** are true. Accordingly, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific task, requiring the reviewing court to draw upon its judicial experience and common sense. *Id.*. The court must disregard "labels and conclusions," and "naked assertions devoid of further factual enhancement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, at 555, 557; *Iqbal*, 566 U.S. at 678. Facts that are merely consistent with a defendant's liability "stop[] short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557; *Iqbal*, 566 U.S. at 678 (internal quotations omitted). Where the pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the plaintiff is not entitled to relief. *Iqbal*, 566 U.S. at 679. Ultimately, to survive a Rule 12 dismissal motion, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Duren v. Byrd*, No. 1:18-cv-00084, 2021 WL 3848105, at *6 (M.D. Tenn. Aug. 26, 2021) (internal citation and quotations omitted).

**B. Consideration of Matters Outside the Complaint**

When assessing a motion to dismiss, in addition to the Complaint, a court can consider

documents incorporated into the complaint by reference to such in the complaint itself.[8] *See Evans v. Vanderbilt U. Sch. of Med.,* 589 F. Supp. 3d 870, 891, fn. 13 (M.D. Tenn. 2022)("[t]he Handbook may be considered in connection with the instant motion to dismiss because it is referenced in the Complaint and integral to plaintiff's claims."); *Pension Benefit Guaranty Corp., v. White Consolidated Ind. Inc.*, 998 F.2d 1192, 1196 (3rd Cir. 1993) (holding a court may consider a document defendant attaches as an exhibit to a motion to dismiss where the plaintiff's claims depend upon the document, noting that otherwise a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document).[9]

## IV. <u>ARGUMENT AND ANALYSIS</u>

### A. Plaintiff's Title VII Claims Are Untimely Because She Filed Her EEOC Charge More Than 300 Days After any Gender Based or Retaliatory Conduct.

Plaintiff's Title VII intentional discrimination, retaliation and harassment - hostile work environment claims must be dismissed because they are time barred. Specifically, Plaintiff did not file her EEOC charge within 300 days of any alleged "gender based" discriminatory act, gender based harassment attributable to Scripps or retaliatory act by Scripps.

Title VII requires plaintiffs to file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1); *Aldridge v. City of Memphis*, No. 07-2614 B, 2008 WL 11417500, *2-3 (W.D. Tenn. May 5, 2008)(dismissing the plaintiffs' Title VII discrimination claim as untimely where he failed to file his EEOC charge within 300 days of adverse action). A plaintiff's claim is time barred unless she files a charge with the EEOC within 300 days of the alleged

---

[8] The Court may also consider Plaintiff's EEOC Charge as it was attached to the Amended Complaint as an exhibit and is a matter of public record. *See Jenkins v. Trane U.S., Inc.*, 2013 WL 3272489, at *5-6, fn.7-8 (M.D. Tenn. June 27, 2013).

[9] *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001)(explaining "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim")(internal citation and quotations omitted).

discriminatory/harassing or retaliatory act. *Id.* Further, a blanket statement in Plaintiff's Amended Complaint that she filed a timely EEOC charge is a legal conclusion, which a reviewing court need not accept as true. *Bigbee v. Vanderbilt University*, No. 3:09-01118, 2010 WL 4320359, at *2-3 (M.D. Tenn. Oct. 20, 2010). Especially when the charge date speaks for itself. Plaintiff filed her EEOC charge on March 31, 2025. (Doc. 17-2; Exhibit B[10]). The 300-day window prior to March 31, 2025, is June 4, 2024. As a result, only gender based discriminatory, gender based harassing, or retaliatory actions attributable to Scripps falling within that window are timely.

### 1. Plaintiff failed to plead any gender-based conduct within the 300-day window.

Plaintiff's Title VII discrimination claim fails because she did not plead any gender-based discriminatory conduct within the 300-day time period. Plaintiff alleges Scripps subjected her to intentional discrimination by allegedly exposing her to sexist language and behavior from a male colleague, subjecting her to demeaning and unequal scrutiny of her physical appearance, requiring her to work grueling hours and under difficult conditions to cover for the incompetence or absences of male colleagues, failing to take meaningful action to protect her from obscene and defamatory "deepfake" images, failing to meet her personal expectations in responding to her complaint regarding a male co-worker[11] and taking away job responsibilities and imposing new work requirements after

---

[10] Plaintiff's Charge of Discrimination, as attached to the Amended Complaint, reflects only the date on which Plaintiff signed the Charge. Because the operative filing date is the date the Charge was received by the EEOC, Defendant attaches a copy of Plaintiff's Charge reflecting the EEOC's receipt date as March 31, 2025 as both a document referenced in the Amended Complaint and a public record.

[11] Plaintiff clearly takes issue with Scripps' investigation and response to her 2022 report despite the fact Scripps investigated her report and issued the male colleague disciplinary action. Unfortunately for Plaintiff, Scripps' response was sufficient under the law. It is well settled that "employers are not automatically liable for sexual harassment perpetrated by their employees." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 274 (6th Cir. 2009) (*citing Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998*); Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). When an employee alleges sexual harassment by co-workers, such as the case here where Plaintiff alleges harassment by a fellow meteorologist, the employer's liability hinges on the employee showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action. *Gallagher*, 567 F.3d at 274. When co-worker harassment is at issue, an employer can be liable only if its response to charges

[she] complained of gender discrimination. (*Id.* ¶¶ 3, 17, 24, 41, 45, 58).

As detailed above, all of these alleged discriminatory actions, with the exception of the allegation Scripps did not adequately respond to the "deepfake" email incident involving a member of the general public, took place in or before 2023. In other words, these alleged discriminatory actions took place well before June 4, 2024 and well outside the 300-day window Plaintiff had to file a charge.[12] Accordingly, Plaintiff's Title VII gender discrimination claim is time barred.[13] *See Granderson v. U. of*

---

of harassment manifests indifference or unreasonableness in light of what the employer knew or should have known at the time. *Birone v. Indian River School*, No. 97-3212, 1998 WL 199791, *3 (6th Cir. April 15, 1998) ("[w]hen an employer implements a remedy, it can be liable for [harassment] in violation of Title VII only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination") (quoting *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868 (6th Cir. 1997)). Here, according to Plaintiff's own allegations, Scripps investigated Plaintiff's report and took corrective action by issuing the male colleague disciplinary action. These are not the actions of an employer indifferent to harassment in the workplace. *Birone*, 1998 WL 199791 (employer not liable for hostile work environment where the defendant investigated the plaintiff's allegations and confronted the alleged wrongdoer); *Martin v. Boeing-Oak Ridge Co.*, 244 F. Supp. 2d 863, 874-76 (E.D. Tenn. 2002)(employer not liable for hostile work environment where plaintiff's allegations of harassment were investigated and management spoke to employees about harassment); *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48 (6th Cir) (no liability where defendant reprimanded the alleged harasser)(*cert. denied* 519 U.S. 863 (1996)). Despite the fact Plaintiff now attempts to assert this was a "sham" investigation, Scripps' investigation and remedial action was effective as Plaintiff has not identified any incident of harassment by the co-worker following his receipt of disciplinary action. Plaintiff's hostile environment claims fail on this basis.

[12] Plaintiff does not assert the "early" 2024 air quality issue in support of her intentional discrimination claim. Even if she attempted to do so, this allegation cannot form the basis of a Title VII discrimination claim because the allegation is not "based upon gender." In order to establish an employment action amounts to gender discrimination, a plaintiff must show that similarly situated individuals outside her protected category, i.e., males, were treated more favorably. Plaintiff does not allege that male employees requested and received special equipment. Plaintiff does not and cannot allege that only female employees were subject to poor air conditions. *See Monak*, 95 F.App'x at 764. As a result, Plaintiff's allegation regarding the air quality at the station cannot form the basis of a gender discrimination claim. *Id.*

[13] Plaintiff likewise cannot rely on the continuing violation doctrine to salvage her claim. The doctrine does not apply where a plaintiff challenges a series of discrete acts, each of which was independently actionable at the time it occurred. *See Brown v. Louisville-Jefferson Cnty. Metro Govt.,* 135 F.4th 1022, 1035 (6th Cir. 2025)("if the defendant's separate acts of [alleged] wrongdoing are individually actionable, the continuing-violation doctrine does not apply."). Here, the alleged conduct consists of discrete events of which Plaintiff was aware when they took place, and thus any attempt to invoke the continuing violation doctrine is unavailing.

*Michigan*, 211 F.App'x 398, 401 (6th Cir. 2006)(affirming dismissal of the plaintiff's race discrimination and retaliation claims because he waited over 400 days before filing his charge of discrimination).[14]

As for Plaintiff's allegation regarding Scripps' response to the "deepfake" email incident involving a member of the general public in October 2024, Plaintiff's own Complaint establishes Scripps' response was not gender based. According to Plaintiff, Scripps responded by doing the same thing for her that Scripps did for a similarly situated male employee, Williams.[15] (Doc. 17 ¶ 51). Scripps responded by blocking the emails as they did for Williams when he was faced with death threats via email.[16] (*Id.*).

In order to establish gender-based discrimination, Plaintiff must allege that Scripps took, or failed to take, action based upon her gender. She needs to plead facts suggesting a similarly situated male was treated more favorably. *Wollor v. Collins Aerospace H.Q.,* No. 3:23-CV-306-CHB, 2024 WL 25097, at *5-7 (W.D. Ky. Jan. 2, 2024)(granting employer's motion to dismiss because the plaintiff did not plausibly allege that his white co-worker was treated more favorably than he was). Here, Plaintiff's own allegations show that Scripps responsive action was the same as its responsive action in a similar situation involving a male employee. As a result, Scripps responsive action is not gender based and cannot form the basis of a discrimination claim. *See Monak*, 95 F.App'x at 764 (affirming dismissal of

---

[14] *See also White v. Adena Health System*, No. 2:17-CV-593, 2018 WL 3377087, at *6 (S.D. Ohio July 11, 2018)(dismissing employee's Title VII retaliation claims because she failed to administratively exhaust her remedies because the EEOC correctly dismissed the charge as untimely); *San Han v. University of Dayton*, 541 F.App'x 622, 628-29 (6th Cir. 2013)(affirming dismissal of the plaintiff's claim as untimely where his EEOC charge was filed more than 300 days of his being notified of termination); *Jenkins v. Metro Bd. of Education*, No. 3:12–0062, 2012 WL 874718, *2-3 (M.D. Tenn. March 14, 2012) (dismissing the plaintiff's ADA and Title VII claims where she failed to file an EEOC charge within 300 days of her termination)

[15] Plaintiff identified Williams as a comparator but notably, the conduct to which Williams was subjected by a member of the general public, **death threats**, was more severe than "deepfake" sexually suggestive images. Regardless, they were treated the same.

[16] While Plaintiff appears to think Scripps had a duty to do more, it is important to note that Plaintiff's Amended Complaint fails to identify any further communications from the viewer after Scripps blocked him, thereby effectively preventing any further contact.

gender discrimination claim because everyone, man or woman, was treated the same way as the plaintiff). Plaintiff's Title VII discrimination claim is untimely and as a result, should be dismissed.

### 2. Plaintiff failed to plead any harassment within the 300-day window.

Plaintiff's Title VII hostile work environment/harassment claim fails because she does not allege any gender-based harassment within the 300-day window. Instead, Plaintiff attempts to salvage her untimely claims by invoking the continuing violation doctrine, asserting in conclusory fashion that Defendant's actions were part of a "persistent hostile work environment." (*Id.* ¶ 55). However, Plaintiff fails to identify any specific gender-based comment or action attributable to Scripps (or its employees) whatsoever within that period. She does not allege the co-worker that harassed her made any comments within the 300-day period or that she was subject to any scrutiny regarding her appearance with the 300 day period to contribute to a hostile work environment. Instead, Plaintiff relies on vague, generalized assertions without tying any timely conduct to any specific actionable harassment. Such conclusory allegations are insufficient to invoke the continuing violation doctrine or render otherwise time-barred claims timely. *Mustafa v. Ford Motor Co.,* 691 F. Supp. 3d 796, 802 (E.D. Mich. 2023) (granting motion to dismiss most of plaintiff's Title VII hostile work environment claim where only discrete acts were alleged and no harassment was pled to invoke the continuing violation doctrine).

Further, Plaintiff cannot bootstrap the "deepfake" emails sent by a member of the general public to her prior allegations of coworker harassment or appearance scrutiny in an effort to manufacture a continuing violation. The alleged conduct by her co-worker and/or a company sponsored industry stylist and the later "deepfake" emails are entirely distinct in kind, source, and timing. The continuing violation doctrine does not permit a plaintiff to revive stale allegations by pointing to an unrelated, later-occurring event, particularly where, as here, the later event involves a third party and not the alleged co-worker and/or industry stylist harasser. *Marquis v. Tecumseh Products*

*Co.*, 206 F.R.D. 132, 172 (E.D. Mich. 2002)("the Court finds no basis for viewing these as continuing violations, where none of the co-workers in question was involved in any later alleged incidents…").[17]

Plaintiff's Title VII hostile work environment claim is untimely and as a result, should be dismissed.

### 3. *Plaintiff failed to plead any retaliatory conduct within the 300-day window.*

Plaintiff's Title VII retaliation claim fails because she did not plead any retaliatory conduct within the 300-day period. Plaintiff alleges she made a report of discriminatory and harassing conduct to Human Resources in 2022 and "in the wake" of the investigation of her report, she was retaliated against. (Doc. 17 ¶¶ 24, 41). Plaintiff alleges Scripps retaliated against her by 1) reducing [her] role and influence at NewsChannel 5; 2) discounting [her] role in co-writing the weather team schedule and coordinating community events; 3) imposing new work and scheduling requirements on [her]; and 4) advising her not to engage in further protected activities. (*Id.* ¶ 77). Plaintiff alleges these alleged retaliatory actions took place in October 2022, "within a few months" of her report to Human Resources, and at the latest in 2023, which was "shortly after [her] community engagement role was taken" and the male colleague she reported was allowed to lead the DEI program in August 2023. (*Id.* ¶¶ 41-42). These alleged retaliatory actions took place well before June 4, 2024, and well outside the 300-day window Plaintiff had to file a charge. Accordingly, Plaintiff's Title VII retaliation claim is time barred. *San Han,* 541 F.App'x at 628 (affirming dismissal of the plaintiff's claim as untimely where his

---

[17] Moreover, Plaintiff's reliance on the "deepfake" emails is misplaced for an independent reason: those emails were sent by an unidentified member of the public, not a Scripps employee. For Scripps to be held liable under Title VII for harassment by a non-employee, Plaintiff must allege facts showing that Scripps intended for the harassment to occur or was otherwise deliberately indifferent to it. *Bivens v. Zep, Inc.,* 147 F.4th 635, 645 (6th Cir. 2025). Plaintiff alleges no such facts. To the contrary, her own allegations establish that Scripps responded to her report by taking action to block the emails, the same response it implemented for a male employee facing similar third-party threats. Absent any allegation that Scripps created, encouraged, or knowingly permitted the third-party conduct to continue, the "deepfake" emails cannot serve as a basis for liability or as a timely anchor for her stale claims. *Id.* Moreover, Plaintiff asserts Scripps did not go far enough to "protect her," she does not allege that she received any further emails or communications from the viewer after Scripps effectively blocked his emails.

EEOC charge was filed more than 300 days of his being notified of termination).[18] Plaintiff's Title VII retaliation claim is untimely and should be dismissed.

### B. Plaintiff Fails to State a Plausible Title VII or THRA Hostile Work Environment Claim

Plaintiff's Title VII and THRA hostile work environment claims fail as a matter of law because her Amended Complaint does not allege any conduct that is sufficiently severe or pervasive to alter the terms and conditions of her employment. The standard is a demanding one: the alleged conduct must be extreme, continuous, and objectively abusive, not merely offensive, inappropriate, or unfair. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)("This standard requires an objectively hostile or abusive environment. . ."). The Courts are quite clear that Title VII/the THRA were never intended as a "general civility code." *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81 (1998).

Plaintiff's Amended Complaint falls well short of this standard. At most, she alleges a handful of inappropriate comments by a coworker occurring between 2017 and 2022, along with complaints regarding workload, scheduling, leave decisions, and perceived unequal treatment. (Doc. 17). These allegations are precisely the type of isolated incidents, episodic conduct, and ordinary workplace grievances that courts consistently hold are insufficient to establish a hostile work environment. *See Ogbonna-McGruder v. Austin Peay State U.*, No. 3:21-CV-00506, 2023 WL 3572891, at *11 (M.D. Tenn. May 19, 2023)(granting motion to dismiss hostile work environment claim because "Plaintiff's claim [lacked] frequency; she . . . alleged a grand total of three acts of harassment within 18 months[, which was] not frequent [enough].").[19]

---

[18] *See also Aldridge,* 2008 WL 11417500 at *2-3 (dismissing the plaintiff's claims as untimely where he failed to file his EEOC charge within 300 days of adverse action); *Metro Bd. of Education*, 2012 WL 874718 at *2-3 (dismissing the plaintiff's ADA and Title VII claims where she failed to file an EEOC charge within 300 days of her termination).

[19] *Burnett v. Tyco Corp.,* 203 F.3d 980, 985 (6th Cir. 2000)(concluding offensive behavior over a six-month period does not create a hostile work environment); *Pahssen v. Merrill Cmty. Sch. Dist.,* 668 F.3d 356, 363 (6th Cir. 2012) (holding that three separate occasions of sexual harassment, a male student

Critically, Plaintiff does not allege frequent, severe, physically threatening, or humiliating conduct. Nor does Plaintiff allege facts suggesting that the purported conduct by any Scripps employees unreasonably interfered with her work performance.[20] Instead, Plaintiff relies on sporadic and temporally remote allegations that, even if true, amount to nothing more than "offhand comments" and routine workplace disputes, which do not rise to the level of actionable hostile work environment. *Id.; Navarro-Teran v. Embraer Aircraft Maint. Services, Inc.,* 184 F. Supp. 3d 612, 624 (M.D. Tenn. 2016)(granting motion to dismiss because "the limited allegations made by Mr. Navarro-Teran . . .which are isolated in occurrence and mild in their expression. . . do not amount to discriminatory changes in the terms and conditions of his employment.").

Plaintiff's allegations, taken as a whole, do not plausibly suggest a workplace "permeated with discriminatory intimidation, ridicule, and insult."[21] Instead, they describe, at most, sporadic comments and ordinary workplace disagreements prior to July 2022, precisely the type of conduct that falls outside the scope of Title VII and the THRA. Because Plaintiff has failed to plead facts that satisfy the severe-or-pervasive standard, her Title VII and THRA hostile work environment claims should be dismissed.[22] *Id.*

---

shoving a female student into a locker, demanding that she perform oral sex on him, and making obscene sexual gestures at her, did not constitute sexual harassment that rose to the level of "severe, pervasive, and objectively offensive"); *Mahan v. Peake,* No. 07-15223, 2009 WL 174130, at *5 (E.D. Mich. Jan. 23, 2009)(finding no severe or pervasive harassment despite allegations that the plaintiff's supervisor asked her "What are you going to do for me?"; would hike up his pants when sitting down in the plaintiff's presence; invited the plaintiff to his home; and gave plaintiff a sexually explicit card).

[20] Plaintiff alleges she took a leave of absence due to the "deepfake" emails. (Doc. 17, ¶ 49). However, that conduct was perpetrated by a non-employee, and as discussed *infra*, Plaintiff must allege facts showing that Scripps intended the harassment, allegations she does not and cannot make.

[21] *Wells v. Steve Madden, Ltd.,* No. 3-15-0366, 2015 WL 4476597, at *2 (M.D. Tenn. July 22, 2015).

[22] Plaintiff's claims also fail because her own allegations negate employer liability under Title VII and the THRA. The Amended Complaint alleges that after Plaintiff reported the conduct, Scripps investigated her report and took disciplinary action, which clearly worked given she is still unable to pinpoint a single instance of alleged conduct by her male co-worker following the investigation. Plaintiff's own allegations establish that Scripps took prompt remedial action in response to the report, which forecloses employer liability as a matter of law. *Newton v. Ohio Dept. of Rehab. and Correction-Toledo*

**C. Plaintiff's THRA Claims Are Barred by the Statute of Limitations.**

Plaintiff's gender discrimination, retaliation, and hostile work environment/harassment claims are subject to dismissal because they are untimely.

THRA claims are subject to a one-year statute of limitations. Tenn. Code Ann. 4-21-311 (d); *Walker v. Town of Greenville*, 347 F. Supp. 2d 566, 569 (E.D. Tenn. 2004). The statute of limitations is not tolled by the filing of a charge with the EEOC. *Id.*[23] As detailed above, the allegations cited by Plaintiff in support of her THRA discrimination and hostile environment/harassment claims all occurred in or before 2022, with the exception of her allegation that Scripps did not do enough in response to "deepfake" images received from a member of the general public, which by Plaintiff's own assertion is not gender based and thus, cannot form the basis of a gender discrimination claim. Likewise, the allegations cited by Plaintiff in support of her THRA retaliation claim all occurred in 2022 and at the latest in August 2023. Plaintiff filed her Original Complaint on December 29, 2025, and Amended Complaint on April 17, 2026, well outside the one-year statute of limitations applicable to her THRA discrimination, hostile work environment/harassment and retaliation claims. As a result, Plaintiff's THRA claims are subject to dismissal.

**D. Plaintiff's Intentional and Negligent Infliction of Emotional Distress Claims are Subject to Dismissal**

Plaintiff's intentional and negligent infliction of emotional distress claims ("IIED/NIED") fail for a number of reasons.

First, these claims are also subject to a one-year statute of limitations. *Clark v. G4S Gov't. Cols., Inc.*, 2014 WL 1154228, \*16 (E.D. Tenn. Mar. 21, 2014); *Burnett v. Tyco Corp.*, 932 F. Supp. 1039, 1043

---

*Correctional Inst.*, 496 F.Appx. 558, 565-66 (6th Cir. 2012)(affirming dismissal of hostile work environment claim because the defendant promptly investigated and responded to the plaintiff's alleged sexual harassment complaint).

[23] *See also Martin* 244 F. Supp. 2d at 871.

(W.D. Tenn. 1996). Thus, all of Plaintiff's allegations other than the "deepfake" email response are time barred.

Second, Plaintiff's IIED/NIED claims are subject to dismissal because her Amended Complaint does not contain facts sufficient to give rise to such a claim. To establish a claim of IIED/NIED, Plaintiff must prove: (1) the conduct complained of was intentional/negligent or reckless; (2) the conduct was so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of resulted in serious mental injury. *Bain v. Wells*, 936 S.W.2d 618 (Tenn. 1997); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). "A plaintiff's burden to demonstrate outrageous conduct is not an easy burden to meet." *Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 704 (Tenn. Ct. App. 2012)(internal citation and quotations omitted). The Tennessee Supreme Court has endorsed the "high threshold" of the Restatement (Second) of Torts, recognizing that liability exists only where conduct is so extreme and outrageous that it exceeds all bounds of decency and is intolerable in a civilized society. *Id.* (citing *Bain*, 936 S.W.2d at 622-23 (quoting *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966)). It is not enough that the conduct is intentional, wrongful, or even malicious; rather, it must be such that an average person would regard it as truly outrageous. *Medlin*, 398 S.W.2d at 274.

Despite a second opportunity to cure the deficiencies in her Original Complaint, Plaintiff still does not allege facts establishing any intent, negligence, or recklessness by Scripps. Instead, she merely recites the elements of her claims, which is insufficient where the factual allegations do not support such conclusions. Rather, the Amended Complaint establishes Scripps had a harassment policy, investigated Plaintiff's complaints, and issued disciplinary action. Likewise, when Plaintiff reported the "deepfake" emails from a viewer, Scripps responded by blocking the third-party sender. Given Plaintiff's own factual allegations, her IIED/NIED claims are legally insufficient and subject to dismissal. *Bazemore v. Performance Food Group, Inc.*, 478 S.W.3d 628, 638 (Tenn. Ct. App. 2013)(dismissing

emotional distress claims where the employer took action upon learning of harassment).

Further, liability for IIED/NIED is found only in the most egregious of situations. *See, e.g., Johnson v. Woman's Hosp.*, 527 S.W.2d 133, 140 (Tenn. Ct. App. 1975) (affirming verdict, where defendant had preserved the body of a premature stillborn infant in a jar of formaldehyde and displayed the jar to the mother); *Dunbar v. Strimas*, 632 S.W.2d 558 (Tenn. Ct. App. 1981) (holding summary judgment on IIED claim improper where medical examiner informed parents their infant had been sexually abused and murdered despite knowing of mother's prior nervous breakdown). Tennessee courts routinely rejected the notion that allegations of adverse employment actions support IIED and/or NIED claims. *See Godfredson v. Hess & Clark Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) ("An employee's termination, even if based upon discrimination, does not rise to the level of extreme and outrageous conduct without proof of something more.").[24] Thus, Plaintiff's allegations of discriminatory and retaliatory actions should not be considered by the Court.

Moreover, Tennessee courts have indicated that trial courts should be wary of permitting IIED/NIED claims to move forward in employment cases, absent exceptional allegations with general allegations of harassment typically not rising to the level of outrageous conduct necessary to establish such a claim. *See e.g., Stacy v. MVT Servs., LLC*, No. 3:11-CV-01241, 2012 WL 2281495, at *8 (M.D. Tenn. June 18, 2012) ("It is clear that not every sexual harassment claim will automatically give rise to an IIED claim, even though, to some extent, all instances of sexual harassment can be considered outrageous") (internal citation omitted).[25] Plaintiff's allegations of harassment are

---

[24] *Johnson v. BellSouth Telecommunications, Inc.*, No. 3:09-cv-323, 2012 WL 899325 (E.D. Tenn. March 14, 2012) (dismissing the plaintiff's intentional infliction of emotional distress based upon his allegedly retaliatory termination noting Tennessee courts have not "recognized that an employee's termination satisfies the requisite elements for outrageous conduct."); *Mays v. Int'l Mill Servs., Inc.*, No. 05–1367–T/AN, 2006 WL 208874, at *4–5 (W.D. Tenn. Jan.26, 2010) (factual allegations of wrongful discharge and discrimination failed to meet very high standards for outrageous conduct in Tennessee).

[25] *See also DeSoto v. Bd. of Parks & Recreation*, 64 F. Supp. 3d 1070, 1096 (M.D. Tenn. 2014) ("Thus, even where courts permit claims of harassment or retaliation to proceed under state and federal statutes,

insufficient to establish a hostile environment/harassment claim let alone allegations that may be reasonably regarded as extreme and outrageous, which is of course a decision for this Court. *Miller v. Currie*, 50 F.3d 373, 377–78 (6th Cir.1995) (It "is well accepted that intentional infliction of emotional distress claims may entirely appropriately be dealt with...in a motion to dismiss.").[26] Plaintiff does not allege any action by Scripps that rises to the level of so outrageous it goes beyond that which is tolerated by a civilized society. Plaintiff alleges her co-worker made a handful of inappropriate comments in 2022 and she was subject to appearance scrutiny by an industry image consultant, both of which do not rise to the level of extreme and outrageous conduct. Upon Plaintiff's report of such, Scripps, which has a harassment policy, investigated, and issued disciplinary action after which, the harassment stopped, which is what is expected under the law.

Nor does Plaintiff's allegation regarding the "deepfake" emails received from a viewer come close to meeting the high standard of an IIED/NIED claim. By her own account, Scripps responded to her report of the "deepfake" emails by taking action to block any further emails from the third-party so that she would not receive further communications from the viewer. (Doc. 17, ¶ 51). Plaintiff does not allege that Scripps created, encouraged, or had any control over the third-party conduct, nor does she allege that Scripps prevented her from pursuing any additional remedies, such as contacting law enforcement or social media sites on which the "deepfake" photos were posted. Notably, she does not even allege she continued to receive emails after Scripps blocked the viewer from contacting her.

---

courts will not permit IIED claims to proceed in most employment discrimination cases; this approach applies even where a defendant or its employees engaged in highly reprehensible conduct or otherwise intended to cause the plaintiff to suffer emotional distress."); *Fonseca v. Golden Living Center-Mountainview*, No. 4:09-cv-93, 2010 WL 3155984, *6-7 (E.D. Tenn. Aug. 10, 2010) (dismissing IIED claim where plaintiff alleged only generalized harassment and discriminatory termination without sufficiently extreme or outrageous conduct).

[26] *Brown*, 393 S.W.3d at 704 ("It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so")(internal citation and quotations omitted).

Plaintiff's own subjective dissatisfaction with the scope of Scripps's response does not transform otherwise reasonable responsive conduct into behavior that is "atrocious" or "utterly intolerable." *See Beyene v. Hilton Hotels Corp.*, 815 F. Supp. 2d 235, 249, fn. 16 (D.D.C. 2011)("[e]ven if [the] investigation was insufficient. . . the Court does not believe that a reasonable juror could find Hilton's failure to be more thorough in its investigation to be so outrageous as to give rise to an IIED claim, especially in the employment context.") Plaintiff fails to state a claim upon which relief may be granted and thus, her IIED and NIED claims should be dismissed.[27]

### E. Plaintiff's Constructive Discharge Claims are Subject to Dismissal.

Plaintiff's Title VII and THRA constructive discharge claims are subject to dismissal for failure to state a claim upon which relief may be granted.

#### 1. Plaintiff's Title VII constructive discharge claim must be dismissed because she failed to exhaust her administrative remedies.

Plaintiff's Title VII constructive discharge claim is subject to dismissal because she failed to exhaust her administrative remedies as to such a claim. Plaintiff's EEOC Charge does not mention or otherwise allege that she was constructively discharged. It is well-settled that employees who allege they have been victims of discrimination must exhaust their administrative remedies. *Benford v. Frank,* 943 F.2d 609, 612 (6th Cir. 1991) (stating "[t]he right to bring an action under Title VII regarding equal employment in the federal government is predicated upon the timely exhaustion of administrative remedies ..."); *Hall v. U.S. Postal Serv.,* 857 F.2d 1073, 1078 n. 4 (6th Cir. 1988).

The general rule in the Sixth Circuit is that "[f]ederal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge." *Albeita v. TransAm.*

---

[27] Third, Plaintiff's IIED/NIED claims are precluded by the Tennessee Workers Compensation Act ("TWCA"). The TWCA provides employees with their exclusive remedy against their employers for work-related injuries. *Lang v. Nissan N.A., Inc.*, 170 S.W.3d 564, 572 (Tenn. 2005).

*Mailings, Inc.,* 159 F.3d 246, 254 (6th Cir.1998). Such "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants."[28] *Baldwin County Welcome Ctr. v. Brown,* 466 US 147, 152 (1984). To determine whether a plaintiff exhausted his or her administrative remedies, the Sixth Circuit applies the "expected scope of investigation test." *Spengler v. Worthington Cylinders,* 615 F.3d 481, 490 (6th Cir. 2010). This test states that the complaint "must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."[29] *Tartt v. City of Clarksville,* 149 F.App'x 456, 461 (6th Cir.2005). Under this test, a plaintiff must "have alleged sufficient facts in his or her EEOC complaint to put the EEOC on notice of the other claim even though the plaintiff failed to check the appropriate box on the EEOC's complaint form." *Spengler,* 615 F.3d at 490.

Here, Plaintiff's constructive discharge claim fails at the threshold because her EEOC Charge contains no allegation that she was forced to resign due to objectively intolerable working conditions.[30] Further, Plaintiff's EEOC Charge, which was filed on March 27, 2025, two months after she resigned, specifically identifies the "date(s) discrimination took place" as "10/7/2017" to "12/1/2024." If Plaintiff believed that her resignation constituted a constructive discharge, she had every opportunity

---

[28] Jurisdictional filing requirements may not be set aside just because a plaintiff initiates an action without the assistance of counsel and is unfamiliar with the mechanics of Title VII. *See Askew v. Stone,* 81 F.3d 160 (6th Cir. 1996).

[29] *Weigel v. Baptist Hosp. of E. Tenn.,* 302 F.3d 367, 380 (6th Cir.2002)("Pursuant to this rule, [the Sixth Circuit] ha[s] recognized that where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.")(internal citation and quotations omitted)*; Younis v. Pinnacle Airlines, Inc.,* 610 F.3d 359, 362 (6th Cir. 2010).

[30] To the contrary, the only reference to Plaintiff's departure appears in a single statement that "up to my departure in January 2025, [Scripps] discriminated and retaliated against me in violation of Title VII of the Civil Rights Act of 1964 . . . and the Tennessee Human Rights Act. . ." This passing reference does not allege that Plaintiff was compelled to resign or that her working conditions were intolerable. Nor does it otherwise suggest that Plaintiff believed she had been constructively discharged.

to say so in her EEOC Charge.[31] Her failure to do so deprived the EEOC of the opportunity to investigate whether her resignation was allegedly compelled by unlawful conduct and likewise deprived Scripps of notice that such a theory would later be asserted in litigation. As such, her claim should be dismissed on this basis alone. *See Williams v. White Castle System, Inc.*, 526 F. Supp. 2d 830, 833-34 (M.D. Tenn. 2007)(finding counsel's conduct sanctionable where he moved to amend the complaint to add a constructive discharge claim even though the plaintiff filed her EEOC charge after leaving her employment and the charge made no reference to constructive discharge).

### 2. Plaintiff failed to plead plausible claims of constructive discharge.

Furthermore, Plaintiff's Title VII and THRA constructive discharge claims fail because she failed to plead facts plausibly demonstrating that she was subjected to working conditions so objectively intolerable that a reasonable person in her position would have felt compelled to resign.[32] Instead, Plaintiff's constructive discharge theory merely repackages the same allegations underlying her discrimination, harassment, and retaliation claims.

A constructive discharge claim carries a demanding standard. To plausibly plead constructive discharge, a plaintiff must allege facts showing that: (1) the employer deliberately created working

---

[31] Retaliation claims are generally excepted from this filing requirement because they usually arise after the filing of the EEOC charge. *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 547 (6th Cir.1991). However, this exception to the filing requirement does not apply to retaliation claims based on conduct that occurred before the EEOC charge was filed. *Id.*

[32] Furthermore, to the extent Plaintiff is attempting to assert constructive discharge claims separate and apart from her overarching Title VII and THRA claims, her standalone constructive discharge claims should be dismissed because they are not stand alone separate actions. *Rositano v. Freightwise, LLC*, No. 3:20-CV-00420, 2021 WL 1174589, at *6 (M.D. Tenn. Mar. 26, 2021); *Franovich v. Hanson*, 687 F. Supp. 3d 670, 687 (D. Md. 2023)(granting motion to dismiss and holding "that a constructive discharge claim is not a standalone claim but instead may satisfy the adverse employment action element of a discrimination or retaliation claim."); *Corbett v. Harvey*, No. 2:06-C-761, 2008 WL 731487, at *11 (S.D. Ohio Mar. 17, 2008)( "[c]onstructive discharge is not itself a cause of action, but rather a means of providing the element of an adverse employment action where the employee resigns instead of being fired.")(collecting cases); *Seay v. Fortune Plastics, Inc.*, No. 3:09-CV-0605, 2012 WL 610006, at *5 (M.D. Tenn. Feb. 24, 2012)(same)(*quoting Bryant v. Skyline Properties, Inc.,* No.3:05–CV–2503–G, 2006 WL 708647 at *2 (N.D. Tex. Mar.20, 2006).

conditions that were objectively intolerable, as perceived by a reasonable person; and (2) the employer did so with the intent to force the employee to resign or that resignation was a reasonably foreseeable consequence of the employer's actions. *Cleveland v. S. Disposal Waste Connections*, 491 F.App'x 698, 708 (6th Cir. 2012) (internal citation and quotations omitted); *Smith v. Henderson*, 376 F.3d 529, 533 (6th Cir. 2004). The Sixth Circuit repeatedly emphasizes that constructive discharge requires working conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Wilson v. Firestone Tire & Rubber Co.,* 932 F.2d 510, 515 (6th Cir. 1991)(internal quotations and citation omitted). Ordinary workplace disputes, criticism, dissatisfaction with assignments, or even alleged discriminatory/harassing acts, without more, do not suffice. *See Smith*, 376 F.3d at 533-34.

Further, because constructive discharge requires a showing of severity beyond that necessary to establish an underlying discrimination or harassment claim, a plaintiff must plead additional facts demonstrating truly intolerable conditions, conditions that effectively leave no reasonable alternative but resignation. *Wilson*, 932 F.2d at 515. This standard is objective: the question is whether a reasonable employee in the plaintiff's position would have felt compelled to resign, **not whether the plaintiff subjectively felt aggrieved**. *Green v. Brennan*, 578 U.S. 547, 555 (2016). Where a complaint merely lists alleged acts of discrimination and/or harassment but fails to allege facts plausibly demonstrating that the working conditions were objectively severe and intolerable, dismissal under Rule 12(b)(6) is appropriate. *See Bender v. Gen. Dynamics Land Sys., Inc.,* No. 2:19-CV-13177, 2020 WL 4366049, at *5 (E.D. Mich. July 30, 2020)(granting motion to dismiss where plaintiff failed to allege facts showing objectively intolerable working conditions necessary for constructive discharge).

The Sixth Circuit has recognized that "constructive discharge can take on two different forms." *Laster v. City of Kalamazoo,* 746 F.3d 714, 728 (6th Cir. 2014). The first occurs "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be

terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge." *Id.* (emphasis and internal citation and quotations omitted). Plaintiff does not allege in her Amended Complaint that Scripps engaged in any conduct communicating that she would be terminated. Rather, she apparently asserts the second form, when an employee resigns because of discriminatory/harassing conduct. *Id.* For such claims, the plaintiff must "demonstrate a discriminatory work environment **even more egregious than the high standard for hostile work environment**." *Id.* (internal citation and quotations omitted and emphasis added). Constructive discharge claims fail where a plaintiff merely alleges workplace conflict, dissatisfaction with management decisions, or repackages the same alleged conduct underlying other employment claims such as discrimination and harassment, rather than alleging objectively intolerable working conditions that would compel a reasonable employee to resign. *See Spann v. Tennessee Dept. of Correction*, No. 1:25-CV-00005, 2026 WL 458295, at *6 (M.D. Tenn. Feb. 17, 2026)("Harassment alone is also not sufficient" to establish constructive discharge).[33]

Here, Plaintiff alleges no facts demonstrating working conditions so objectively intolerable that a reasonable person in her position would have felt compelled to resign, or that Scripps deliberately created such conditions to force her resignation. Instead, her constructive discharge claim

---

[33] *See also Dendinger v. Ohio,* 207 F.App'x 521, 527 (6th Cir. 2006) (holding alleged sexual overtures and rude or demeaning conduct did not exceed ordinary discrimination to support hostile-environment constructive discharge claim); *Cooper v. Jackson-Madison Cnty. Gen. Hosp. Dist.,* 742 F. Supp. 2d 941, 957 (W.D. Tenn. 2010) ("[t]he bar for proving constructive discharge is higher than that for a hostile work environment claim. . ."); *Ragland v. F & M Koz, Inc.,* No. 221CV02530TLPCGC, 2022 WL 945317, at *8 (W.D. Tenn. Mar. 29, 2022)(granting motion to dismiss constructive discharge claim the plaintiff must allege conduct even more egregious than the high standard for hostile work environment); *Gilhooly v. UBS Securities, LLC,* 772 F. Supp. 2d 914, 918 (N.D. Ill. 2011)(granting motion to dismiss because the plaintiff's criticism and harassment allegations lacked the required factual severity of conduct necessary for a constructive discharge claim); *Roadman v. Select Specialty Hosp.,* No. 3:16-CV-246, 2017 WL 4236581, at *4 (W.D. Pa. Sept. 22, 2017) (granting motion to dismiss and stating "[w]hile this Court offers no opinion as to whether the allegations . . . are sufficient to make out a . . . hostile work environment claim, these allegations are insufficient to make out a claim for constructive discharge.")

merely repackages the same alleged outdated workplace grievances underlying her other claims. At most, Plaintiff alleges that in or before 2022, a male co-worker made a handful of inappropriate comments, male colleagues did not work as hard or as much as she did, she was occasionally required to work longer hours or assume additional responsibilities, she worked from home while ill with COVID-19, she attended meetings with a stylist who allegedly made inappropriate comments, and she disagreed with Scripps' investigation and disciplinary response to her report of such. These allegations fall well short of the "objectively intolerable" conditions required to sustain a constructive discharge claim. *See Dendinger,* 207 F.App'x at 527.

Furthermore, Plaintiff's belated attempt to label Scripps' investigation a "sham" is contradicted by her own allegations, which make clear the investigation and remedial action worked—because, despite this being her second bite at the apple, she cannot identify a single instance of misconduct by her male co-worker or ongoing image scrutiny after the investigation. That absence of any continued harassment is fatal to her constructive discharge theory, which requires ongoing, intolerable conditions, not a situation where the alleged conduct ceased after the employer intervened. *Coffey v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 194 F.3d 1311 (6th Cir. 1999)(holding that a seven-month gap between employee's resignation and alleged workplace harassment "rebuts any inference that [the employee] felt compelled to resign because of the alleged harassment. . .and defeats his claim of constructive discharge.") Indeed, Plaintiff alleges she continued working for nearly two years after the investigation without any further misconduct. At most, her allegations reflect dissatisfaction with past, addressed conduct, not an environment so intolerable that resignation was the only option. Her attempt to revive resolved, isolated allegations into a constructive discharge claim nearly two years later is implausible and should be rejected.

Plaintiff's allegations of retaliation fare no better. Her assertion that management removed certain responsibilities, imposed additional reporting requirements in 2022, and allowed a male

coworker to lead the diversity committee in August 2023, reflects, at most, stale routine workplace disputes and perceived unfairness in management decisions. *Blackburn v. Shelby Cnty.*, 770 F. Supp. 2d 896, 920 (W.D. Tenn. 2011)("a mere change in [employee's] responsibilities does not amount to an adverse employment action."); *Lee v. Cleveland Clinic Found.,* 676 F.App'x. 488, 494 (6th Cir. 2017)("[i]ncreased surveillance and discipline, whether warranted or not, do not constitute a material adverse change)[34]. The fact that Plaintiff's grievances occurred in or before 2022 and 2023, two (2) or more years prior to her resignation, further highlights the fact she was not subject to "objectively intolerable" conditions. *See Lavack v. Owen's World Wide Enter. Network, Inc.,* 409 F. Supp. 2d 848 (E.D. Mich. 2005)(finding employee's constructive discharge claim was not causally linked to his sexual harassment complaints, and he thus failed to establish *prima facie* case of retaliation under Title VII, where he made his first complaint two years before altercation, he made his last complaint four months before altercation).

Finally, the event that appears to have actually prompted Plaintiff's resignation, her receipt of emails from a viewer about purported "deepfake" images on the internet cannot plausibly support a constructive discharge claim under Title VII or the THRA. Because constructive discharge is not an independent claim but a theory under which she can claim an adverse employment action under Title VII and/or the THRA, the underlying conduct in question by Scripps must be gender based. As previously noted, Plaintiff's allegations show Scripps treated her the same as a similarly situated male employee, recommending the same response to her "deepfake" email as it did when a male employee received similar, if not more serious, death threats. Such equal treatment cannot support a gender-based claim under Title VII or the THRA. *See Monak*, 95 F. App'x at 764.

---

[34] While these cases arise in the discrimination context under the pre-*Muldrow v. City of St. Louis* framework, and *Muldrow* is limited to discrimination claims, not retaliation, they remain instructive to the Court's analysis of whether Plaintiff's alleged change in responsibilities rises to the level of an adverse employment action.

Moreover, Plaintiff does not allege that Scripps, or anybody employed by Scripps, created, distributed, or encouraged the "deepfake" images. Scripps engaged with Plaintiff regarding her concerns but lacked the ability to control the third-party's actions as he or she was not a Scripps employee. Scripps, however, did respond by blocking the third party's emails as they had for a male employee facing similar, and arguably more egregious, emails from a third party. At best Plaintiff alleges that this was not enough and Scripps should have taken further action on her behalf. But an employee's dissatisfaction with an employer's response to a complaint does not transform otherwise ordinary workplace issues into objectively intolerable working conditions. *See Webster v. Town of Warsaw*, 66 F. Supp. 3d 706, 709-10 (E.D.N.C. 2014)(granting motion to dismiss where employee's dissatisfaction with employer's response to complaints did not render conditions objectively intolerable for constructive discharge).

Critically, Plaintiff does not allege that Scripps forced her to resign, presented her with an ultimatum, reduced her compensation, threatened termination, or otherwise left her with no reasonable alternative but to end her employment. To the contrary, Plaintiff alleges only that she unreasonably concluded the company would not address her concerns regarding the "deepfake" to her subjective satisfaction and ultimately resigned rather than renewing her contract. Because Plaintiff alleges nothing more than workplace conflicts, disagreement with management decisions, and the same conduct underlying her claims of Title VII and THRA discrimination, retaliation, and hostile work environment/harassment, she fails to plausibly allege the type of extreme and deliberate working conditions required to support a constructive discharge claim. As such, Plaintiff's constructive discharge claims should be dismissed.

## IV.  **CONCLUSION**

For the reasons set forth herein, Defendant respectfully requests that this Court grant its Motion to Dismiss Plaintiff's Amended Complaint in its entirety.

Date: April 29, 2026                    Respectfully submitted,


                                        *s/Mary Dohner Smith*
                                        _____
                                        Mary Dohner Smith, TN BPR #021451
                                        mdohner@constangy.com
                                        Rachael Rustmann, TN BPR #037432
                                        rrustmann@constangy.com
                                        **Constangy, Brooks, Smith & Prophete,
                                        LLP**
                                        Highland Ridge 2
                                        555 Marriott Drive, Suite 315
                                        Nashville, TN 37214
                                        Phone: (615) 340-3804

                                        *Attorneys for Defendant Scripps Media, Inc. d/b/a
                                        WTVF News Channel 5*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 29th day of April, 2026, I electronically filed the foregoing DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS with the Clerk of the Court, which will send electronic notification of such filing to the following:

John T. Spragens
john@spragenslaw.com
David O. Kieley
dave@spragenslaw.com
Spragens Law PLC
915 Rep. John Lewis Way South
Suite 100
Nashville, TN 37203
(615) 983-8900


                                        *s/ Mary Dohner Smith*
                                        Mary Dohner Smith