**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| BREE SMITH FRIEDRICHS,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>SCRIPPS MEDIA, INC. d/b/a WTVF<br>NEWSCHANNEL 5,<br><br>　　　　Defendant. | No. 3:25-cv-01494<br><br>Judge Eli J. Richardson<br>Magistrate Judge Barbara D. Holmes<br><br><br>JURY DEMAND |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant Scripps Media, Inc. d/b/a WTVF NewsChannel 5's ("NewsChannel 5" or "Defendant") motion to dismiss is premature and fatally flawed. Notwithstanding the detailed, plausible allegations of gender-based discrimination in Plaintiff Bree Smith Friedrichs' ("Plaintiff" or "Ms. Friedrichs") detailed Amended Complaint, Defendant asks the Court to impose a heightened summary judgment evidentiary standard at the pleading stage and accept unsupported assertions of fact to support dismissal, foreclosing Ms. Friedrichs' right to prove her claims in discovery.

The allegations in the Amended Complaint give the Court an ample basis to deny the motion, as required by controlling authority. Defendant's statute of limitations arguments ignore Ms. Friedrichs' well-pleaded allegations that Defendant itself prevented her from exercising her rights—whether through its repeated assurances it would investigate her claims, its sham investigations into misconduct, or its claims it was powerless to do anything to address misconduct—all of which are pled in detail, often using direct quotations, in the Amended Complaint. Because Defendant's motion overlooks Ms. Friedrichs' well-pleaded allegations, cites inapposite authority, and invokes facts outside the record, the motion should be denied.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim is disfavored, especially when one's civil rights are at stake. *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012) (citing *Nuchols v. Berrong,* 141 Fed.Appx. 451, 453 (6th Cir. 2005) (unpublished), *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976)). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing Fed. R. Civ. P. 8(a)(2)). While Rule 8 does not require "detailed factual allegations," it "demands more than demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal quotation omitted). The Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (citation omitted). The pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. And it cannot simply tender "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 678 (citing *Twombly*, 550 U.S. at 557). On a motion to dismiss, courts must "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party has the burden of proving that no claim exists.'" *Palermo v. Luxor Staffing, Inc.*, No. 3:25-CV-00499, 2026 WL 300771, at *4 (M.D. Tenn. Feb. 4, 2026) (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008)). And at the pleading stage of a discrimination case, a plaintiff is not required to establish a *prima facie* discrimination case under the *McDonnell Douglas* burden-shifting framework,

which generally does not apply until after the completion of discovery. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002).

A plaintiff is also entitled to advance multiple case theories—event contradictory theories—pending the clarification of facts during discovery. *Mustafa v. Ford Motor Co.*, No. 24-1763, 2025 WL 2720988, at *2 (6th Cir. Sept. 24, 2025) (applying *Swierkiewicz*) (noting that "at the pleading stage, [plaintiff] need not commit to—or even identify—the theory he wants to rely on.").

## I. Defendant's statute of limitations arguments contradict Ms. Friedrichs' well-pleaded claims and cannot be adjudicated at the Rule 12 stage.

Ms. Friedrichs has plausibly alleged that she experienced gender-based discrimination, harassment and a hostile work environment, and retaliation during the relevant time period. Further, her plausible allegations regarding the continuing violation doctrine, fraudulent concealment, equitable estoppel, and waiver all require discovery and should be permitted to proceed to discovery before Defendant's fact-specific defenses can be adjudicated on their merits. Defendant's arguments based on the statute of limitations (Def. Memorandum at p. 6, *et seq.*) are premature and should be denied.

Ms. Friedrichs has pled that although Defendant promised her a "100-percent zero tolerance" approach to sexual harassment beginning in August 2022, NewsChannel 5 in fact allowed such harassment to continue (Amended Comp. ¶ 36); failed to perform an unbiased investigation or take disciplinary action (Amended Comp. ¶¶ 33-35); discouraged women employees from reporting sexual harassment to Scripps corporate offices (Amended Comp. ¶¶ 37-38); gave Ms. Friedrichs false and unlicensed legal advice (Amended Comp. ¶ 51); and effectively denied her multiple requests to involve the legal department. (Amended Comp. ¶ 52). Defendant's consistent failure to uphold the law or even its own anti-harassment policy constituted a continuing violation, and its deceptive communications with Plaintiff fraudulently concealed the true nature of its actions, and the injuries it was inflicting upon her.

The United States "Supreme Court has held that the 300-day limitation for filing a charge with the EEOC is subject to waiver, estoppel, and equitable tolling." *Reed v. ADM/ARTCO*, 57 F. App'x 682, 683 (6th Cir. 2003) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). Each of those doctrines involves a fact-intensive inquiry not appropriate at this early stage, where no discovery has been taken, where "the facts are limited to the allegations in [Plaintiff's] amended complaint" and rely on factual determinations that "will require further development of the facts through discovery." *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 466–67 (Tenn. 2012) ("premature" under Tennessee law to dismiss complaint filed 29 years after expiration of statute of limitations without discovery; alleged fraudulent concealment required fact-intensive inquiry into plaintiff's "reasonable care and diligence"). Plaintiff is not required, at the pleading stage, to identify or commit to the theory or theories on which she will rely. *Mustafa*, 2025 WL 2720988 at *2.

Defendant relies on unreported and inapposite authority (Memo. at pp. 6-7) from the *Aldrige* and *Bigsbee* cases, neither of which apply to the case at bar. In *Aldridge*, the court dismissed a complaint as untimely but noted that the plaintiffs "do not argue that the continuing violation doctrine applies or that the statute of limitations should be tolled. Therefore, the Court will not address those issues." *Aldridge v. City of Memphis*, No. 07-2614 B, 2008 WL 11417500, *2-3 (W.D. Tenn. May 5, 2008) at *3 n. 3. Similarly, the *Bigbee* court's conclusion that it "need not accept Plaintiff's legal conclusion that she filed a timely charge" with EEOC was based on the plaintiff filing an only "partially completed" charge form that included conflicting filing dates, failed to request any action by EEOC, and did not identify the disability underlying plaintiff's claims. *Bigbee v. Vanderbilt Univ.*, No. 3:09-01118, 2010 WL 4320359, at *1 (M.D. Tenn. Oct. 20, 2010). These idiosyncratic fact patterns bear no resemblance to the facts of this case, where Ms. Friedrichs' pleadings detail the clear contradictions between Defendant's promises to remedy ongoing sexual harassment at NewsChannel 5 and its failure to take any meaningful action. Moreover, Ms. Friedrichs alleges that multiple doctrines can operate to toll the limitations period, and a

fully completed and properly dated EEOC charge is properly referenced in the Amended Complaint (at ¶ 15) and is relied upon by Defendant. (Def. Memo., Ex. B).

### A. The continuous violation doctrine, which Ms. Friedrichs adequately pled, cannot be adjudicated at this early stage.

Ms. Friedrichs has made a sufficient showing to toll the statute of limitations under the continuous violation doctrine. *Johnson v. Knox Cnty., Tennessee*, No. 3:19-CV-179-KAC-DCP, 2022 WL 894601, at *4 (E.D. Tenn. Mar. 25, 2022) (citing *Basista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 688, 693 (6th Cir. 2017); *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009)). The Sixth Circuit has recognized two categories of continuous violations. *Howell v. Cox*, 758 F. App'x 480, 484-85 (6th Cir. 2018). "First, a continuous violation arises when defendants engage in 'a longstanding and demonstrable policy,'" as shown "by a preponderance of the evidence that some form of intentional discrimination against the class of which plaintiff was a member was the ... standing operating procedure." *Id.* "Second, a continuous violation exists when the cumulative effect of serial acts amounts to an actionable violation." *Id.* The second category does not apply "does not apply to discrete acts that are easily identifiable and individually actionable." *Id.*

Plaintiff has made an initial showing that there was "a longstanding and demonstrable policy" of illegality at NewsChannel 5. Ms. Plantinga admitted in August 2022 that Defendant had failed to properly address Mr. Rothenberg's sex-based harassment at least once and at some unidentified period in the past, and that Mr. Rothenberg had previously attempted to interfere in another complaint investigation, also at an unknown time. (Amended Comp. ¶¶ 33-36, 43). Furthermore, Defendant failed to perform an unbiased investigation or take any disciplinary action (Amended Comp. ¶¶ 33-35); falsely claimed that beginning in August 2022 it would be "100-percent zero tolerance" for sexual harassment while allowing such harassment to continue (Amended Comp. ¶ 36); repeatedly discouraged women employees from reporting sexual harassment to Scripps corporate offices (Amended Comp. ¶¶ 37-38); gave Ms. Friedrichs false and

unlicensed legal advice (Amended Comp. ¶ 51); and effectively denied her multiple requests to involve the legal department. (Amended Comp. ¶ 52). The evidence shows that from some point prior to August 2022 until Plaintiff's departure in January 2025, Defendant consistently and uniformly failed to prohibit sex-based harassment, "investigate thoroughly" any complaints of harassment," prohibit retaliation, or "take appropriate action to remedy incidents of harassment" in gross violation of its anti-harassment policy. (Def. Ex. B.) A reasonable trier of fact could conclude that, whatever the Defendant's written policies were, its actions were sufficient to constitute "a longstanding and demonstrable policy" of illegality.

Second, Plaintiff may be able to show with further discovery that "the cumulative effect of serial acts" not individually actionable nonetheless "amounts to an actionable violation." Doubtless the Defendant will argue that the managerial actions described in the paragraph above were not individual actionable breaches of law or policy. Yet a reasonable jury could conclude—particularly once discovery illuminates the interactions and decisions of Defendant's agents—that the cumulative effect of those actions in denying Ms. Friedrichs' a proper investigation and remedial action was itself actionable.

Defendant objects to the continuing violation doctrine's applicability with the demonstrably false assertion that "the alleged conduct consists of discrete [actionable] events of which Plaintiff was aware when they took place" (Memo. p. 8). As alleged, Plaintiff was not and is not aware of the substance of the previous complaints against Rothenberg, nor of Defendant's admitted mishandling of those complaints, nor of the extent of Defendant's obvious efforts to deny her rights under both the law and NewsChannel 5 policy. Neither Plaintiff, this Court, or the Jury should be asked to rely on Defendant's unevidenced, untested denials, which is precisely why applicability of the continuous violation doctrine should be adjudicated by trial or summary judgment, and not at this premature stage. *See Howell*, 758 F. App'x at 484-85 (affirming summary judgment).

### B. Plaintiff plausibly alleges that Defendant's fraudulent concealment of its wrongful acts tolls the statute of limitations.

Defendant repeatedly fraudulently concealed both the nature of Ms. Friedrichs' injuries and the identity of individuals responsible for those injuries, raising the appropriate inference that Defendant intended to deny Ms. Friedrichs her lawful workplace protections and discourage her from her exercising her lawful rights.

"To toll the statute of limitations under Title VII because of fraudulent concealment, the plaintiff must prove (1) that the defendant actively concealed its wrongful conduct from the plaintiff; (2) that concealment prevented the plaintiff from discovering the defendant's wrongdoing during the limitations period; and (3) the plaintiff exercised diligence in trying to uncover the defendant's conduct." *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 910 (6th Cir. 2010) (quoting *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009)). *Mallory v. Caterpillar Fin. Servs. Corp.*, 256 F. Supp. 3d 770, 777 (M.D. Tenn. 2017).

Under state law, the fraudulent concealment doctrine tolls the statute of limitations when, despite the plaintiff's "reasonable diligence and care" in investigating her claims, "the defendant has taken steps to prevent the plaintiff from discovering he [or she] was injured." *Redwing*, 363 S.W.3d at 462–67 (quoting *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 146 (Tenn. 2001)) ("While other decisions couch the fraudulent concealment doctrine in terms of the defendant taking affirmative steps 'to conceal the cause of action,' the reference to "cause of action" in this context is synonymous with the plaintiff's injury.") The doctrine applies to "circumstances ... in which the plaintiff is aware that he or she ha[s] been injured but does not know or have reason to know the identity of the person or persons who caused the injury," and thus "to circumstances in which the defendant engages in conduct intended to conceal the identity of the person or persons who caused the plaintiff's injury from the plaintiff." *Pike v. U.S.*, 868 F. Supp. 2d 667, 682 (M.D. Tenn. 2012) (quoting *Redwing* at 462-463) (tolling limitations period governing *Bivens*

claim where U.S. Attorney and U.S. Marshals Service concealed the identities of officer-defendants through delay, misrepresentation, and/or strategic omissions, preventing plaintiff from timely identifying defendants); *Zelaya v. Hammer*, No. 3:19-CV-62, 2022 WL 16757083, at *6 (E.D. Tenn. Jan. 26, 2022) (citing *Pike* and *Redwing*; limitations period tolled when IRS concealed identities of agents involved in raid at issue in litigation, including by denying FOIA requests).

The factual analysis in *Redwing*, like the case at bar, involved an allegation that the employer-defendant Catholic Diocese had fraudulently concealed its knowledge of prior sexual abuse by the employee-defendant (Fr. Guthrie). Like the case at bar, the defendant had yet to make any factual offerings into the record:

> The allegations involving the Diocese's active concealment of its knowledge of Fr. Guthrie's activities and its efforts to mislead Mr. Redwing could, if proven, provide a basis for a reasonable fact-finder to conclude that Mr. Redwing, lacking any basis for suspecting that the Diocese would deceive him, acted with reasonable diligence and, therefore, that he should not be held to have known that the Diocese's conduct caused him injury. They could also provide a basis for a reasonable fact-finder to conclude that the Diocese fraudulently concealed its knowledge of and responsibility for Fr. Guthrie's conduct, thereby tolling the statute of limitations.
>
> Ultimately, the decisions regarding the Diocese's alleged fraudulent concealment of its knowledge of and responsibility for Fr. Guthrie's conduct and Mr. Redwing's diligence in pursuing his claim against the Diocese **will require further development of the facts through discovery.**

*Redwing*, 363 S.W.3d at 466–67 (Tenn. 2012) (emphasis added). In reversing dismissal, the Supreme Court speculated on the potential application of fraudulent concealment without the type of robust factual allegations Ms. Friedrichs raises in her Amended Complaint. *Id*. ("the allegation that the Diocese misled Mr. Redwing and his family <u>could be construed</u> to mean that at some point, Mr. Redwing or his family asked the Diocese about its knowledge of Fr. Guthrie's conduct and that the Diocese's response misled them. The Court of Appeals has correctly recognized that this circumstance could amount to fraudulent concealment.")

In an unreported but factually similar case from last year, the Western District further clarified that fraudulent concealment attaches both when an employer conceals an agent/employee's tortious conduct and its own, particularly where the employer obstructed the plaintiff's access to information about the nature of their injury and the actors involved:

> Here, Defendants face claims based on their own actions or inaction, different than [employee-priest] Wiggs' actual conduct. … Casey could not have uncovered Defendants' responsibility for the alleged injuries without much different information than that which came from Wiggs' actions. Unlike *Amazon Fulfillment Services*, Casey alleges that he could not have discovered Defendants' roles in perpetuating his injuries even with reasonable diligence and care.

*Casey v. Cath. Diocese of Memphis*, No. 2:24-CV-02660-SHL-TMP, 2025 WL 1840728, at *6 (W.D. Tenn. July 3, 2025) (distinguishing *Smith v. Amazon Fulfillment Services, Inc.*, No. 1:18-CV-276-TAV-SKL, 2021 WL 4693522 (E.D. Tenn. Oct. 7, 2021) and *Schultz v. Davis*, 495 F.3d 289 (6th Cir. 2007) ("in both cases, plaintiffs were hurt in specific incidents and had all the information necessary to find the parties responsible for the negligence at issue …")).

Ms. Friedrichs has alleged analogous concealment by this Defendant, but in far more detail than in *Redwing* or *Casey*. While she was aware at the time of filing that Mr. Rothenberg was responsible for certain acts of sex-based discrimination—and that Defendant's agents News Director Sandy Boonstra ("Ms. Boonstra,"), Assistant News Director Michelle Bonnett ("Ms. Bonnett"), and General Manager Lyn Plantinga ("Ms. Plantinga") were aware of his behavior—the available evidence indicates that the Defendant on an ongoing basis, up to and including the present, has concealed the full extent of both of Mr. Rothenberg's and station management's wrongdoing.

Most analogous to *Redwing* and *Casey*, Ms. Plantinga in August 2022 admitted to Ms. Friedrichs that Defendant was aware of at least one previous incident of discrimination by Mr. Rothenberg (Amended Comp. ¶ 36); that Defendant had failed to properly address Mr. Rothenberg's behavior on at least one previous occasion (*Id*.) (calling Rothenberg's behavior "hugely distressing" and "absolutely terrible," and

admitting "were some opportunities earlier that things could have been handled differently"); and that Mr. Rothenberg had previously attempted to interfere in a complaint investigation. (Amended Comp. ¶¶ 36, 43). Under both the law and Defendant's own anti-harassment policy, it is improper for managers or staff to interfere in a sexual-harassment investigation. (Def. Ex. A) ("Employees may not interfere with, hinder or refuse to cooperate with any investigation of workplace harassment.").

In July 2022, Ms. Boonstra and Ms. Bonnett falsely assured Ms. Friedrichs that a "neutral third party" would investigate her allegations against Mr. Rothenberg, fraudulently concealing from Plaintiff the fact that the investigator, Katie Ford, was a Scripps employee. (Amended Comp. ¶¶ 33-35.) Defendants have not introduced any evidence to indicate that Ms. Friedrichs discovered this ruse within the limitations period.

Ms. Plantinga similarly concealed Defendant's inaction with many false assurances that "Moving forward, it is 100-percent zero tolerance" for Mr. Rothenberg's behavior. (Amended Comp. ¶ 36.)

NewsChannel 5 management further and on multiple occasions discouraged women employees from reporting sexual harassment to Scripps corporate offices, (Amended Comp. ¶ 37) ("Call me, and you're going to have to trust that that phone call is gonna settle it.") (Amended Comp. ¶ 38); ("In a separate conversation, NewsChannel 5 management also advised the other woman employee involved in that incident not to discuss future incidents involving Mr. Rothenberg with Ms. Friedrichs or with Scripps' corporate offices, but instead to report them only to station management.") These statements too, constitute a violation of Defendant's anti-harassment policy, which clearly encourages concerned employees to contact Scripps corporate managers outside of their immediate supervisors. (Def. Ex. A.) ("If any employee feels they are being harassed, they should immediately contact their supervisor, their HR business partner, other manager or contact the ethics line at 513-977-3886, 888-397-4911 or ethicspoint.com.")

Ms. Bonnett also gave Ms. Friedrichs unlicensed legal advice to discourage her from pursuing any

action related to the deepfake incidents. (Amended Comp. ¶ 51) ("…legally, there's just nothing, there's no sort of cease and desist under sort of this realm, all of that just doesn't exist yet."). While it is clear that Defendant and a number of employees were involved in fraudulently concealing the injuries they were causing to Ms. Friedrichs and other women, it remains unclear who was involved and to what extent.

**C. Further discovery is necessary to determine the proper application of the fraudulent concealment doctrine, and Defendant's argument to the contrary is premature.**

As a threshold matter, Defendant has not made out a *prima facie* statute of limitations defense because it has raised no argument or evidence that Ms. Friedrichs was aware at the time of filing of the full extent of her injuries. Even if Defendant had properly raised the defense, the fraudulent concealment doctrine under Tennessee or federal law requires a fact-intensive, multi-factor inquiry for which the factual record has not yet been adequately developed. *Redwing*, 363 S.W.3d at 462–63[1]; *Ruth*, 604 F.3d at 910. Nor has Defendant alleged that Ms. Friedrichs failed to exercise reasonable care and diligence in investigating her claims. *See*, *Redwing*, 363 S.W.3d 4at 466-467 ("For purposes of both the discovery rule and the doctrine of fraudulent concealment, the pivotal issue is whether [plaintiff] would have discovered [the defendant's] allegedly wrongful acts had he exercised reasonable care and diligence.") (citations omitted); *Ruth*, 604 F.3d at 910.

The plaintiff's "care and diligence" is a question of fact, analysis of which at the motion-to-dismiss stage must weigh all allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Id*. Ms. Friedrichs has demonstrated the care and diligence she took by making repeated complaints

---

[1] "The plaintiff invoking the fraudulent concealment doctrine must allege and prove: (1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so; (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence; (3) that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and (4) that the defendant concealed material information from the plaintiff by "'withholding information or making use of some device to mislead' the plaintiff in order to exclude suspicion or prevent inquiry." Plaintiffs asserting the doctrine of fraudulent concealment to toll the running of a statute of limitations must demonstrate that they exercised reasonable care and diligence in pursuing their claim. See *Vance v. Schulder*, 547 S.W.2d 927, 930 (Tenn.1977); *Ray v. Scheibert*, 224 Tenn. 99, 104, 450 S.W.2d 578, 580–81 (1969)."

to NewsChannel 5 management and engaging in follow-up discussions about those complaints. (Amended Comp. ¶¶ 20, 23, 24, 26, 30, 32, 36, 37, 41, 46, 49).

Ms. Friedrichs has sufficiently pleaded that fraudulent concealment took place, and discovery should proceed to determine the full extent of what was concealed and by whom. *See Redwing*, 363 S.W.3d 436, 466–67 (Tenn. 2012) ("Ultimately, the decisions regarding the Diocese's alleged fraudulent concealment of its knowledge of and responsibility for Fr. Guthrie's conduct and Mr. Redwing's diligence in pursuing his claim against the Diocese will require further development of the facts through discovery."); *Casey*, 2025 WL 1840728, at *5–6 (noting that in *Redwing*, "the plaintiff had sufficient facts years earlier related to the abuser" but it was nonetheless "premature" to dismiss the complaint, and that "taking the allegations as true" Casey "used reasonable diligence to uncover his claims against these Defendants. …")

**D. Equitable tolling operates to toll the statute of limitations because of the Defendant's actions in concealing Plaintiff's injury.**

To decide "whether equitable tolling of the EEOC filing period is appropriate," courts "consistently" use the factors set forth in *Truitt v. County of Wayne*, 148 F.3d 644 (6th Cir. 1998). *Covert v. Cellco P'ship*, 563 F. Supp. 3d 767, 771 (M.D. Tenn. 2021). The *Truitt* factors include "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness [in] remaining ignorant of the particular legal requirement." *Id.* at 771 (M.D. Tenn. 2021).

Under state law, the doctrine of equitable estoppel "arises from the equitable maxim that no person may take advantage of his or her own wrong" and "tolls the running of the statute of limitations when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period." *Redwing*, 363 S.W.3d at 460. (citing *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d at 145; *Ingram v. Earthman*, 993 S.W.2d 611, 633 (Tenn.Ct.App.1998)). To apply equitable estoppel, the plaintiff "must demonstrate that the

defendant induced him or her to put off filing suit by identifying specific promises, inducements, suggestions, representations, assurances, or other similar conduct by the defendant that the defendant knew, or reasonably should have known, would induce the plaintiff to delay filing suit." *Id*. at 460 (citing *Fahrner v. SW Mfg., Inc.,* 48 S.W.3d at 145; *Hardcastle v. Harris,* 170 S.W.3d at 85). The plaintiff "must also demonstrate that [his or her] delay in filing suit was not attributable to [his or her] own lack of diligence." *Hardcastle v. Harris,* 170 S.W.3d at 85.

As already noted, while Defendant has not made out a *prima facie* statute of limitations defense, Plaintiff has nonetheless made a sufficient factual showing of Defendant's many "specific promises, inducements, suggestions, representations, assurances, or other similar conduct" intended to dissuade her from filing suit, whether analyzed under federal equitable tolling doctrines or state equitable estoppel law.

Ms. Friedrichs repeatedly reported sex-based discrimination to her supervisors as instructed by Defendant's anti-harassment policy (Amended Comp. ¶¶ 20, 23, 24, 26, 30, 32, 36, 37, 41, 46, 49), while Defendant repeatedly and falsely claimed both that they would investigate and stop the sexual harassment (*id*. ¶¶ 20, 33-37, 48); discouraged Ms. Friedrichs and other women from reporting sexual harassment to corporate managers (*id*. ¶¶ 37, 38, 41); and improperly advised Ms. Friedrichs that she did not have legal recourse (*id*. ¶ 51). Ms. Friedrichs has also demonstrated that she acted in reliance on those false assurances up to and including the time of her departure in January 2025. (*Id*. ¶¶ 33-39, 43, 48-53). Ms. Friedrichs' requisite diligence has already been outlined above.

Defendants, at this stage, are not permitted to introduce evidence to rebut or otherwise explain the foregoing actions, which Ms. Friedrichs plausibly alleged were intended to delay or prevent her from filing suit. To dismiss Ms. Friedrichs' claims at this stage, without further discovery, would permit Defendant to "take advantage of its own wrong." Discovery should be allowed to proceed.

## II. Plaintiff has plausibly alleged "gender-based" conduct and is not required to plead a prima facie case at the Rule 12 stage under *McDonnell Douglas.*

At the pleading stage, a Title VII plaintiff "bears the burden of alleging facts that plausibly suggest a causal connection between [her] protected status and the adverse employment action." *Mustafa*, 2025 WL 2720988 at *4 (citing *Keys*, 684 F.3d at 610; *Serrano*, 699 F.3d at 897–98) (Allegations detailing a "specific event" in which Mustafa was "treated differently" from his nonprotected colleagues, for example, could support a reasonable inference of discrimination). *Savel v. MetroHealth Sys.*, 96 F.4th 932, 944 (6th Cir. 2024) (quoting *Keys*, 684 F.3d at 610).

A plaintiff is not required to plead a *prima facie* case sufficient under the *McDonnell Douglas* test in order to survive a motion to dismiss, and it is error for a court to so require. *Keys*, 684 F.3d 605 at 609 (6th Cir. 2012); *see also Palermo*, No. 3:25-CV-00499, 2026 WL 300771, at *5 (*McDonnell Douglas* burden-shifting framework does not apply at Rule 12 stage) (Richardson, J.). Just last year, the Supreme Court advised a limited application of *McDonnell Douglas* even at the summary judgment stage. *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 319, 145 S. Ct. 1540, 1551, 221 L. Ed. 2d 929 (2025) (Thomas, J., concurring; "extension of the doctrine into the summary-judgment context has caused 'significant confusion' and 'troubling outcomes on the ground.'")

Defendant's kitchen-sink motion does not cite any contrary authority to impose summary-judgment evidentiary standards at this early pleading stage. Plaintiff has alleged gender-based discrimination by contrasting specific and negative actions taken against women broadcaster at NewsChannel 5 that were not taken against similarly situated male broadcasters. The remaining factual questions should be resolved through discovery.

**A. Plaintiff has sufficiently pled gender-based disparate treatment.**

In *Swierkiewicz*, the U.S. Supreme Court found that a complaint which "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination" were sufficient and "easily satisfied" the pleading requirements of Fed. R. Civ. P. 8(a). In *Keys*, the Sixth Circuit found the operative complaint "at least as

detailed, if not more so" than those in *Swierkiewicz* where: "It details several specific events in each of those employment-action categories where Keys alleges she was treated differently than her Caucasian management counterparts; it identifies the key supervisors and other relevant persons by race and either name or company title; and it alleges that Keys and other African Americans received specific adverse employment actions notwithstanding satisfactory employment performances." *Keys v. Humana, Inc.,* 684 F.3d 605, 610 (6th Cir. 2012).

> More recently, the *Mustafa* court found the plaintiff had pleaded sufficiently specific facts where:
>
> in the lead-up to his termination, he was allegedly treated less favorably than similarly situated, non-Middle Eastern, non-Muslim colleagues. These include (1) receiving a negative performance evaluation following the withdrawal of engineering support that had been promised, (2) being falsely accused of timecard fraud, (3) being the only employee disciplined for wearing shorts, (4) being assigned the workload of a departed engineer, and (5) being replaced by someone outside his protected classes. … He asserts that he met all his 2020 deliverables. And he did so despite being assigned responsibilities outside of his defined role, receiving little support, and being undermined by his supervisors. This alleged inconsistency between performance and termination further reinforces the plausibility of a discriminatory motive.

*Mustafa*, 2025 WL 2720988 at *4-5. The *Mustafa* court added that "critically," the plaintiff alleged that the "repeated involvement" of one supervisor plausibly connects the earlier alleged discrete discriminatory acts to the ultimate adverse employment action (termination), suggesting the same discriminatory animus was at work." *Id.*, *see also Foust v. Gen. Motors, LLC*, No. 24-1794, 2026 WL 267434, at *2 (6th Cir. Feb. 2, 2026) (plaintiff's claim that he received harsher punishment than comparator employee for similar policy violations were "far from 'naked assertions devoid of further factual enhancement;'" defendants objection that plaintiff hadn't provided comparator's job title or supervisor was irrelevant because "we have never required plaintiffs to include such detail") (citing *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013)).

Ms. Friedrichs' Amended Complaint specifies dates and events; individuals' names, titles, and genders; and directly contrasts Defendant's treatment of her and other women with its far more permissive

treatment of her male colleagues. She has alleged that NewsChannel 5 permitted Mr. Rothenberg's unexplained absences and false excuses for absences, inability to operate essential equipment or perform core job functions (Amended Comp. ¶ 28-29); and interference with prior sexual harassment complaints (*id*. ¶ 36); as well as an unnamed male colleague sleeping through assigned broadcasts, or being late or absent without explanation (Amended Comp. ¶ 27.) Like the *Mustafa* plaintiff, she has explicitly contrasted those acts with Defendant refusing women leave time and imposing excessive work schedules specifically to cover for absent or inadequate male colleagues including Mr. Rothenberg. She has further alleged that she and other women were held to unequal and distressing standards in terms of their physical appearance, while males were not. (Amended Comp. ¶¶ 27-30.) Most centrally, she has alleged that she and other women were subjected to a discriminatory, hostile work environment to which men were not. "Demanding more at the pleading stage would improperly conflate pleading rules with summary judgment burdens—a result the Supreme Court has cautioned against." *Mustafa*, 2025 WL 2720988 at *5 (citing *Swierkiewicz*, 534 U.S. at 511–12).

Dismissal is warranted only where—in sharp contrast to this case—a plaintiff's "naked assertions" fail to draw any causal connection between their membership in a suspect class and the alleged discrimination. *See Han v. University of Dayton*, 541 F. App'x 622 (6th Cir. 2013) (upholding dismissal where complaint alleged only that following plaintiff-instructor's termination some of his courses were given to a white male instructor and contained no details of how others outside of the plaintiff's protected class were treated differently); *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013) (affirming dismissal of complaint based solely on broad, conclusory statements made "upon information and belief," without naming any similarly situated individuals or providing facts demonstrating that persons of different national origins received more favorable treatment); *Rexam Beverage Can Co.*, 630 F. App'x at 464 (6th Cir. 2015) (affirming dismissal where plaintiff "fails to provide any examples of how [defendant-employer] treated those substantially younger employees more favorably, *or* any facts

regarding how those employees are similarly situated.") (emphasis original). Plaintiff has clearly alleged her protected class, a series of discriminatory acts clearly directed at her membership in that class, and Defendant's liability for those acts.

### B. Defendant's objections to Plaintiff's disparate-treatment claims misstate both the law and the facts.

Defendant's authority for the proposition that Ms. Friedrichs must "plead facts suggesting a similarly situated individual outside her protected category was treated more favorably" is inapposite. The *Monak* case, which Defendant mis-cites as "affirming dismissal" (Memo. at p. 9) was in fact affirming a grant of summary judgment, following the normal discovery process, and applying the *McDonnell Douglas* standard which is forbidden at this stage. *Monak v. Ford Motor Co.*, 95 F.App'x 758 (6th Cir. 2004).

Similarly, the unreported *Wollor* case (Memo. at p. 9) presents an extreme and inapposite set of facts. *Wollor* concerned a *pro se* plaintiff who sued under Kentucky law after being fired for making "highly offensive, homophobic comments;" responded to the employer-defendant's motion to dismiss with "a five-page, single-paragraph narrative" which included information "entirely unrelated" to his alleged wrongful termination; "failed to comply with the basic formatting requirements of Rules 8 and 10 or the substantive requirements" and did "not clearly set forth any specific cause of action or recite the elements" of his claim. *Wollor v. Collins Aerospace Headquarters*, No. 3:23-CV-306-CHB, 2024 WL 25097, at *1-4 (W.D. Ky. Jan. 2, 2024) Indeed, the *Wollor* complaint was so bare-boned that "because he makes reference to his own race and the races of his co-workers at various points in his Complaint, and because there are no facts on which to infer Plaintiff might be asserting anything other than discrimination based on his race, the Court presumes he is alleging race discrimination." *Id*. at *3.

Defendants also misstate the factual record, asserting that "According to Plaintiff, Scripps responded by doing the same thing for her that Scripps did for a similarly situated male employee, [investigative reporter Phil] Williams." (Memo. at p. 10). This assertion is false. Plaintiffs have not alleged that Mr.

Williams, a male who may or may not have requested NewsChannel 5 intervene after he received death threats; was similarly situated to Friedrich, a woman who received sexualized images of herself, created with an emerging technology, and repeatedly requested the channel's assistance. Plaintiff's Amended Complaint mentions Mr. Williams only once in a quotation from Ms. Bonnett offered to allege that Bonnett had given Plaintiff unlicensed and misleading legal advice. (Comp. ¶ 51.) Plaintiff certainly has not alleged that Defendant did "the same thing" for Mr. Williams and Ms. Friedrichs, as Defendant's actions on behalf of Mr. Williams are unknown.

In another bit of legerdemain, Defendants assert without evidence and conclude without argument that "Scripps investigation and response to her 2022 report … was sufficient under the law." (Memo. at fn. 9). Defendant has not offered the substance of the 2022 report into evidence, nor made any argument as to its legal sufficiency, and this assertion should be rejected, as should Defendant's unevidenced claim that Plaintiff "is well aware" that her claim regarding her request for better air filtration (Amended Comp. ¶ 31) "is blatantly false." (Memo. at p. 4, fn. 7)

Defendant's repeated assertion that the deepfake incident is not actionable because it involves "a member of the general public" (Memo. at p. 10) should be similarly discarded. As in *Redwing* and *Casey*, Defendant has not been accused of the initially harmful acts (creation and distribution of the images), but of responding to them in an inappropriate and discriminatory fashion. In that context, the facially sexual nature of the images remains relevant to Defendant's discriminatory intent. *See*, *Mustafa*, 2025 WL 2720988 at *4 (defendant's acts that are not facially discriminatory may, in context of facially discriminatory acts, be "considered collectively" to support a reasonable inference of discriminatory intent) (citing *Bostock v. Clayton Cty.*, 590 U.S. 644, 656–57 (2020)."

If Defendants wish to assert facts in their defense, they should file their Answer. If they wish to argue the strength of the evidence, they will have the opportunity at summary judgment and trial. "Time—and, crucially, discovery—will tell whether [plaintiff] satisf[ies] the prima facie case requirements." *Mustafa*,

2025 WL 2720988 at *6. (citing *Masaebi v. Arby's Corp.*, 852 F. App'x 903, 909 (6th Cir. 2021) (resolving employment discrimination claims on the pleadings is generally disfavored because key evidence—especially regarding motive and intent—often rests in the hands of the employer).

**III.    Plaintiff has sufficiently pled her Hostile Work Environment claims under both Title VII and the THRA.**

To prevail on a hostile work environment claim under Title VII, a plaintiff must show that: "(1) she was a member of a protected class; (2) she was subjected to unwelcome ... harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable." *Schlosser v. VRHabilis, LLC*, 113 F.4th 674, 683 (6th Cir. 2024) (upholding jury verdict, denying defendant's motion for judgment as a matter of law) (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)); *accord Palermo*, 2026 WL 300771, at *9. Furthermore, not every injurious act must be "gender-based" in order to support a hostile workplace claim. *Id.* (actions that may not, on their own, constitute Title VII may nonetheless contribute to a jury's evaluation of the overall environment in which the plaintiff worked) (citing *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 563 (6th Cir. 1999); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–15, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (employee may use even untimely, prior discrete acts of discrimination as "background evidence in support of a timely claim;" hostile environment claims "are based on the cumulative effect of individual acts"); *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 994 (6th Cir. 2009) (discrete acts of discrimination, such as a failure to promote, cannot *alone* amount to a hostile work environment) (emphasis original).

Ms. Friedrichs has met this standard by detailing the pervasive and severe discrimination she encountered at NewsChannel 5. Whether the discrete acts by Mr. Rothenberg (crude references to women colleagues' breasts (Amended Comp. ¶¶ 20, 24); disrespecting Ms. Friedrichs' leadership (*id.* ¶ 26)) constitute only "sporadic and temporally remote allegations," (Memo. at p. 13), the actions by NewsChannel

management do not. Multiple station managers acted, seemingly in concert, to protect Mr. Rothenberg's behavior *over a period of years*: failing to act on previous complaints of harassment and retaliation by Rothenberg (*id.* ¶ 36); lying to Ms. Friedrichs about the neutrality of their sexual harassment investigator, (*id.* ¶¶ 33-35); falsely assuring her they would stop future harassment (*id.* ¶ 36); discouraging women including Plaintiff from reporting harassment to anyone other than station management (*id.* ¶¶ 37, 38) ("Call me, and you're going to have to trust that that phone call is gonna settle it."); and giving unlicensed legal advice. (*Id.* ¶ 51). These actions go beyond run-of-the-mill harassment because they affected Ms. Friedrichs' rights and ability to address that harassment itself, particularly in an environment where women were made to pick up the slack for absent or underqualified males and held to unequal standards of appearance (*id.* ¶¶ 27-30). The "repeated involvement" of the same supervisors—Ms. Boonstra, Ms. Bonnett, and Ms. Plantinga—also suggests "the same discriminatory animus was at work" across the incidents. *Mustafa*, 2025 WL 2720988 at *4-5. "Demanding more at the pleading stage would improperly conflate pleading rules with summary judgment burdens—a result the Supreme Court has cautioned against." *Id.* at *5 (citing *Swierkiewicz*, 534 U.S. at 511–12).

Defendant also misconstrues the *Harris* standard as a purely objective standard, when in fact it requires that "both an objective and a subjective perspective must be considered." *Schlosser*, 113 F.4th at 687 (conduct must be sufficiently severe or pervasive "both to the reasonable person and the actual victim") (citing *Harris v. Forklift Sys., Inc*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)). With evidence of both Defendant's acts and Plaintiff's reasonable perception of those acts, a reasonable jury could easily conclude that a hostile work environment existed at NewsChannel 5.

In light of the extensive allegations at hand, Defendant's reliance on the unreported *Ogbonna-McGruder v. Austin Peay State U.*, No. 3:21-CV-00506, 2023 WL 3572891, at *11 (M.D. Tenn. May 19, 2023), in which the plaintiff complained of only three discrete acts of harassment and, crucially, failed to

connect those acts to her race, is misplaced. *See id*. ("Plaintiff has not alleged that APSU or its employees " 'made any statements concerning her race, nor does she allege that [APSU] or its employees engaged in any conduct whatsoever that could reasonably be interpreted as racially motivated.'" (quoting *Veasy v. Teach for Am., Inc.*, 868 F. Supp. 2d 688, 696 (M.D. Tenn. 2012)).

**IV.     Plaintiff has pled sufficient facts to support her Intentional Inflection of Emotional Distress (IIED) claim, and Defendant's arguments should be addressed at summary judgment.**

To support an IIED claim under Tennessee law, "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn.1997).

The intentional nature of the claims has already been extensively discussed. Plaintiff has further pleaded facts that a reasonable jury could find sufficiently outrageous, including Mr. Rothenberg's statements ("You only got your job because of your tits" (Amended Comp. ¶ 20); telling a woman "I will hit a bitch" in mixed company at a work conference (*id*. ¶ 21)) and the obstructive acts by management discussed above. Plaintiff has also pled a basis to find serious mental injury, as evidenced by her physician's recommendation that she take disability leave to counter the depression, anxiety, and insomnia caused by the discriminatory work environment at NewsChannel 5. (*Id.*, ¶ 47.)

Plaintiff's well-pleaded IIED claims are not undermined by the inapposite and unconvincing authorities cited by Defendant. The premature nature of Defendant's request to dismiss the IIED claims is illustrated by the fact that nearly every one was adjudicated at the summary judgment phase with the benefit of discovery. *See Bain v. Wells*, 936 S.W.2d 618 (Tenn. 1997) (affirming summary judgment); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196 (Tenn. 2012) (appeal from a trial verdict); *Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696 (Tenn. Ct. App. 2012) (summary judgment); *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270

(appeal from a demurrer to a declaration); *Johnson v. Woman's Hosp.*, 527 S.W.2d 133, 140 (Tenn. Ct. App. 1975) (appeal from trial verdict); *Dunbar v. Strimas*, 632 S.W.2d 558 (Tenn. Ct. App. 1981) ("Since matters outside the pleadings were presented and considered by the court, the motion was treated as one for summary judgment"); *Godfredson v. Hess & Clark Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) (summary judgment). Furthermore, while some—such as *Women's Hospital* and *Dunbar*—contain particularly inflammatory facts, Defendant does not at any point identify an exemplary set of *de minimis* facts—much less any insufficiencies in Plaintiff's claims—other than Defendant's subjective disagreement with those claims.

Defendant's only real authority supporting dismissal of an IIED claim at the pleading stage is *Miller v. Currie*, 50 F.3d 373, 377–78 (6th Cir.1995), which acknowledges that an IIED claim may be disposed of in a motion to dismiss but—unfortunately for Defendant—reversed dismissal on the basis that the pleadings were sufficient. Identifying only "three separate occasions" on which the defendant nursing-home "intentionally and maliciously hid" plaintiff's 98-year-old mother when she came to visit, and on one occasion had the plaintiff arrested for trespass, the *Miller* court found the claims "could under some set of facts constitute 'extreme and outrageous' conduct." *Id*. Here, Ms. Friedrichs has alleged a set of facts comparable in harm, but far worse in terms of frequency and concealment, and will offer the support of a physician's medical opinion. (Amended Comp. ¶ 47.) The IIED claim should be allowed to proceed.

### A. Defendant's remedial actions were insufficient to foreclose liability.

Defendant appears to argue that any purported remedial action by an employer-defendant is *per se* sufficient to "negate employer liability" (Memo. at 13) and "forecloses employer liability as a matter of law" (Memo., n. 22). This argument is contrary to the *Bazemore*, *Newton* and *Miller* cases upon which Defendant relies, all of which highlight the insufficiency of Defendant's purported remedial actions.

An employer's remedial action is unreasonable if it "manifests indifference or unreasonableness in light of the facts the employer knew or should have known." *Newton v. Ohio Dep't of Rehab. & Correction-Toledo Corr. Inst.*, 496 F. App'x 558, 565–66 (6th Cir. 2012) (quoting *Blankenship v. Parke*

*Care Ctrs. Inc.,* 123 F.3d 868, 873 (6th Cir.1997)). The *Bazemore* court found that employer-defendant had responded reasonably where, upon learning of the plaintiff's sexual harassment allegations, the employer *the next day* requested more detail from the complainant; the next week interviewed the complainant and the alleged perpetrator; and ordered him to stay away from the complainant and the office during pendency of the investigation. *Bazemore v. Performance Food Group, Inc.*, 478 S.W.3d 628, 633-637 (Tenn. Ct. App. 2013. The court was also highly persuaded by that plaintiff's unexplained refusal to turnover incriminating audio recordings to the employer. *Id*.

Similarly in *Newton*, the defendant-employer's response was found to be sufficient where it "immediately began an internal investigation" and additional "independent investigation by the Ohio State Highway Patrol;" conducted detailed witness interviews; prepared a report of its findings; advised plaintiff of her rights as a victim; placed plaintiff on paid administrative leave with benefits; and conducted a pre-disciplinary hearing including formal findings of fact. *Newton v. Ohio Dep't of Rehab. & Correction-Toledo Corr. Inst.*, 496 F. App'x 558, 565–66 (6th Cir. 2012).

The investigations in *Bazemore* and *Newton* were prompt, thorough, and neutral, as opposed to Defendant's admitted failures to act (Amended Comp. ¶ 36); false and misleading statements about the neutrality of an investigator (*id*., ¶¶ 33-35); lack of hearing, disciplinary findings, or neutral outside investigator; and active discouragement of complaints (*id*., ¶¶ 37, 38, 51). The anti-harassment policy relied upon by Defendant—which cannot be considered by the Court at this stage—is copyrighted 2025, and Defendant has not—and cannot at this stage—offer proof that the policy was in effect at the time of the events in question.

Furthermore, it appears Defendant serially violated the policy on which it now hopes to rely. Ms. Bonnett admitted that Defendant failed to respond to Mr. Rothenberg's attempts to interfere with a previous investigation, in violation of policy. (Def. Ex. A., "Employees may not interfere with, hinder or refuse to cooperate with any investigation of workplace harassment.") The faulty investigation of Plaintiff's claims

further violates the requirements "to investigate thoroughly and resolve any known incidents of harassment" and do so "promptly." *Id*. Defendant's admonitions to Ms. Friedrichs and other women to keep complaints of harassment in-house at NewsChannel 5 (and not report them to the higher-ups at Scripps) violates the policy provision offering employees a number of different ways to report. *Id*. (employees should "contact their supervisor, their HR business partner, other manager or contact the ethics line.") Finally, the absence of evidence that Defendant in fact took any action to stop the sexist behavior of which Plaintiff complained violated the provision that "[t]he company will take appropriate action to remedy incidents of harassment." *Id*.

The record as it stands does not support any inference that the Defendant's remedial actions were legally sufficient to foreclose liability.

## V. Plaintiff's constructive discharge claim is well-pleaded and not subject to dismissal.

To demonstrate constructive discharge, a plaintiff must allege that: (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; and (2) the employer did so with the intention of forcing the employee to quit. *Bender v. Gen. Dynamics Land Sys., Inc.*, No. 2:19-CV-13177, 2020 WL 4366049, at *4 (E.D. Mich. July 30, 2020) (citing *Logan v. Denny's, Inc.,* 259 F.3d 558, 568– 69 (6th Cir. 2001)). "Among the factors the Sixth Circuit has identified as relevant to assessing whether a reasonable person would have felt she was experiencing intolerable working conditions (the first prong of constructive discharge), are demotion, reduction in salary, reduction in job responsibilities, reassignment to menial or degrading work, harassment by the employer intended to encourage the employee's resignation, and offers of early retirement or employment on less favorable terms." *Id*.

Plaintiff has pleaded sufficient facts for her constructive discharge claim to proceed. Ms. Friedrichs has alleged that she was, over a period of years, subjected to sexist harassment while male employees were given *carte blanche* to continue their behavior; Defendant deceived her and otherwise acted to deny

an appropriate remedy for her complaints; Defendant took job responsibilities away from her; and Defendant declined to protect her or offer her meaningful assistance after an anonymous source sent her harassing, personally invasive "deepfake" videos. In *Bender*, the plaintiff's "somewhat spare" allegations "that after more than a decade of working at General Dynamics, she was suddenly given a negative performance review and placed on a PIP" did not rise to the level of "intolerable" working conditions. *Bender*, 2020 WL 4366049, at *4-6 (E.D. Mich. July 30, 2020). Unlike the *Bender* plaintiff, Plaintiff has not only laid out colorable claims, but claims that may become even more compelling with discovery.

### A. Plaintiff's constructive discharge claim clearly "grows out of" her EEOC charge and is not subject to dismissal.

Plaintiff's constructive discharge claim "grows out of" the EEOC charge and can be appropriately adjudicated at the summary judgment stage. Defendant's objections that Plaintiff's constructive discharge claim was not explicitly labeled in her EEOC charge are premature and misstate the law. "Federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge <u>or the claim can reasonably be expected to grow out of the EEOC charge</u>. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998) (emphasis added) (following standard in *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 544–45 (6th Cir.1991)). "[W]here facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Peake v. Brownlee*, 339 F. Supp. 2d 1008, 1023 (M.D. Tenn. 2003) (quoting *Davis v. Sodexho, Cumberland Coll. Cafeteria,* 157 F.3d 460, 463 (6th Cir.1998)).

"Courts construe this requirement liberally, because most plaintiffs are laypersons who filed their EEOC charges without the benefit of counsel." *Peake v. Brownlee*, 339 F. Supp. 2d 1008, 1023 (M.D. Tenn. 2003) (internal citations omitted). However, "the fact that we liberally construe EEOC charges filed by *pro se* complainants 'does not mean that a broad reading may not, or should not, be given in cases where a plaintiff has counsel.'" *Spengler v. Worthington Cylinders*, 615 F.3d 481, 490–91 (6th Cir. 2010)

(affirming denial of summary judgment; "plaintiff clearly sets forth a retaliation claim in the narrative of the EEOC charge such that both the defendant and the EEOC were on notice of the plaintiff's retaliation claim") (internal citations omitted); *Farmer v. ARA Services, Inc.* 660 F.2d 1096, 1105 (6th Cir. 1981) (plaintiffs' equal-pay claim alleging union discriminated in negotiating pay scales for different job designations could proceed, despite the EEOC charge alleging only that union failed to represent them in securing the higher paying designations, because "EEOC charge implicitly alleged that the plaintiffs possessed the same qualifications and responsibilities as employees in the higher paying jobs."); *Weigel v. Baptist Hosp. of E. Tenn.,* 302 F.3d 367, 380 (6th Cir. 2002) (retaliation claim can proceed where EEOC charge "included facts relating both to [defendant-employer's] refusal to rehire Weigel and to the allegedly discriminatory treatment she received while previously employed" there).

In Contrast, the Sixth Circuit held that an accommodation claim did "not reasonably grow out of" an EEOC charge for wrongful termination where the EEOC charge "specifically alleged only a termination claim," "[n]othing in the charge pointed to any claim other than an improper refusal to keep Jones's job open while she recovered," and plaintiff listed only her termination date and not the earlier date of the alleged accommodation violation. *Jones v. Sumser Ret. Vill.*, 209 F.3d 851, 853–54 (6th Cir. 2000)

Here, the EEOC and Defendants were clearly on notice of the constructive discharge claim because the same facts underpin the discrimination and retaliation claims, and because Plaintiff connected those facts to her departure multiple times in the charge:

- "Up to my departure in January 2025, NewsChannel 5 discriminated and retaliated against me in violation of Title VII …"
- "… [I] worked there until this January, when I declined to renew my contract."
- "I and my female colleagues were, up to an including the time of my departure, disproportionately scrutinized in regard to our conduct and physical appearance."

(Def. Ex. B, ¶¶ 1, 2, 7.)

Furthermore, Ms. Friedrichs' constructive discharge claim overlaps completely with the facts alleged to support her retaliation and hostile work environment claims, and therefore entirely constitute "facts related with respect to the charged claim" which "would prompt the EEOC to investigate a different, uncharged claim" as *Sodexho* contemplates.

**B. Defendant's objections to the constructive discharge are premature and unpersuasive.**

Defendant's application of the fact-intensive "expected scope of investigation test" (Memo. at p. 19) prior to discovery is premature, as illustrated by the numerous summary-judgment cases they cite in support of their dismissal motion. *See*, *Benford v. Frank,* 943 F.2d 609, 612 (6th Cir. 1991) (affirming summary judgment); *Hall v. U.S. Postal Serv.,* 857 F.2d 1073 (6th Cir. 1988) (affirming summary judgment); *Albeita v. TransAm. Mailings, Inc.,* 159 F.3d 246 (6th Cir.1998) (affirming summary judgment in part and reversing in part; McDonnell Douglas ); *Spengler v. Worthington Cylinders,* 615 F.3d 481, 490 (6th Cir. 2010) (appealing from trial verdict); *Younis v. Pinnacle Airlines, Inc.,* 610 F.3d 359, 362 (6th Cir. 2010) (affirming summary judgment); *Weigel v. Baptist Hosp. of E. Tenn.,* 302 F.3d 367 (6th Cir.2002) (affirming grant of summary judgment); *Williams v. White Castle System, Inc.*, 526 F. Supp. 2d 830, 834 (M.D. Tenn. 2007) (reinstating grant of summary judgment).

While the court in *Tartt* did grant a motion to dismiss, it did so before the *Keys* decision and by applying the *prima facie* standard from *McDonnell Douglas* at the pleading stage, as Keys subsequently forbid. *Keys*, 684 F.3d at 609 (6th Cir. 2012); *Ames*, 605 U.S. 303, 319, (2025) (Thomas, J., concurring; "extension of the doctrine into the summary-judgment context has caused 'significant confusion' and 'troubling outcomes on the ground.'") *Tartt* is also factually distinguishable as it rested in part on that plaintiff's failure to check the box marked "retaliation" on the EEOC charge form, but no such box exists for a constructive discharge claim. (*See, e.g.*, Def. Ex. B, p. 1). Ms. Friedrichs has plausibly laid out her departure from NewsChannel 5, and the station's hostile work environment as the cause of that departure. Her constructive discharge claim should be allowed to proceed.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's motion to dismiss be denied.

Dated: May 13, 2026

Respectfully submitted,

John Spragens, TN Bar No. 31445
David Kieley, TN Bar No. 31188
**SPRAGENS LAW PLC**
915 Rep. John Lewis Way S., Suite 100
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com
dave@spragenslaw.com

*Counsel for Plaintiff Bree Friedrichs*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 13th day of May 2026, I electronically filed the foregoing

Response in Opposition to Defendant's Motion to Dismiss via the Court's electronic filing system,

which will send electronic notification of such filing to the following:

Mary Dohner Smith, TN Bar No. 21451
Rachael Rustmann, TN BPR No. 037432
mdohner@constangy.com
rrustmann@constangy.com
Constangy, Brooks, Smith
& Prophete, LLP
Highland Ridge 2
555 Marriott Drive, Suite 315
Nashville, TN 37214
Phone: (615) 340-3804

*Attorneys for Defendant Scripps Media, Inc. d/b/a WTVF News Channel 5*

John Spragens